The HOUSING AUTHORITY OF the CITY OF DALLAS, Appellant,

v.

Jerry KILLINGSWORTH, Appellee.

No. 05–10–00172–CV.

Court of Appeals of Texas, Dallas.

Jan. 5, 2011.

Rehearing Overruled Feb. 7, 2011.

Jadd F. Masso, Katherine Elizabeth Anderson, Strasburger & Price, LLP, Dallas, TX, Monica Alvarez, Strasburger & Price, Frisco, TX, for Appellant.

John H. Crouch, Kilgore & Kilgore, Inc., Dallas, TX, for Appellee.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice MURPHY.

In this interlocutory appeal, the Housing Authority of the City of Dallas (DHA) challenges the trial court's denial of its plea to the jurisdiction contesting Jerry Killingsworth's breach of contract claim. We affirm the trial court's order.

### PROCEDURAL BACKGROUND

Killingsworth sued the DHA for breach of a written employment contract to hire him as the DHA's President, Chief Executive Officer, and Secretary of the Board of Commissioners. Citing sections 271.151(3)(C) and 271.152 of the Texas Local Government Code as the basis for the DHA's waiver of immunity, Killingsworth alleged the contract, which was attached to the petition, was signed by the DHA Board Chairman Guy Brignon with authority pursuant to the DHA by-laws, and the board's vote in executive session to authorize the contract was publicly admitted in the minutes of a December 19, 2006 meeting. Killingsworth also alleged the DHA repudiated the contract and refused to allow him to assume his duties for purely political reasons. As part of his repudiation allegation, he stated the DHA "never put the contract before the Board for a public vote to confirm the private 3–0 vote taken in executive session."

The DHA responded with a plea to the jurisdiction, asserting Killingsworth's claim does not fall within the legislative waiver of immunity because the alleged contract was not in compliance with DHA policies and procedures and "was not approved at any time, including at a properly called and recorded meeting of the Board...."[1] The DHA also filed a counterclaim seeking a declaration the contract was void and requesting attorney's fees and costs. By summary judgment motion on the counterclaim, the DHA argued, among other things, the board never approved the alleged employment contract with Killingsworth and, even if approved in closed session as alleged, any vote would be in violation of the Texas Open Meetings Act (TOMA). *See* TEX. GOV'T CODE ANN. §§ 551.001–.0146 (West 2004 & Supp. 2010).

Responding to the DHA's plea and summary judgment motion,[2] Killingsworth argued he created a fact issue as to the existence of a binding contract.[3] The trial court denied both the DHA's motion for summary judgment and plea to the jurisdiction without specifying a basis for the denials. The DHA filed this interlocutory appeal of the trial court's denial of its plea to the jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2008).

In a single issue, the DHA argues the trial court improperly denied its jurisdictional plea because neither Killingsworth's pleading nor the jurisdictional evidence supports a waiver of immunity from suit under section 271.152 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005) (waiver of immunity for certain contract claims). Specifically, the DHA asserts the alleged contract was not "properly executed," as required by statute, *see id.* §§ 271.151(2), 271.152, and the DHA has not waived immunity by filing a counterclaim for declaratory relief.

## APPLICABLE LAW

### Standard of Review

■ Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). Whether a court has subject matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226; *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). Accordingly, we review de novo a challenge to the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226; *IT–Davy*, 74 S.W.3d at 855.

■ When a plea to the jurisdiction challenges the pleadings, we look to whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993)). We liberally construe the plaintiff's pleadings in favor of jurisdiction, and we look to the plaintiff's

1. The DHA does not challenge the trial court's jurisdiction over Killingsworth's civil-rights claims added by the latest amended petition.

2. Killingsworth attached evidence to his response to the DHA's summary judgment motion.

3. Killingsworth also argued summary judgment on the DHA's counterclaim is inappropriate because the DHA lacks standing to set aside the contract as a result of its own TOMA violations. We express no opinion, however, on whether a governmental entity may use TOMA to reverse one of its own actions.

intent, accepting as true the facts alleged. *Id.* at 226, 228. To prevail, the party asserting the plea must show that, even if the allegations in plaintiff's pleadings are taken as true, there remains an incurable jurisdictional defect on the face of the pleadings depriving the trial court of subject matter jurisdiction. *See Concerned Cmty. Involved Dev., Inc. v. City of Houston,* 209 S.W.3d 666, 673 (Tex.App.-Houston [14th Dist.] 2006, pet. denied), *cert. denied,* 552 U.S. 949, 128 S.Ct. 432, 169 L.Ed.2d 261 (2007).

A court is not required to look solely to the pleadings; rather, it may consider evidence and must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000) (confining evidentiary review to evidence relevant to jurisdictional issue). In reviewing a plea to the jurisdiction where evidence is submitted that implicates the merits of the case, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Miranda,* 133 S.W.3d at 227–28. After the governmental unit asserts and provides evidentiary support for its plea, the non-movant is required to show only that a disputed material fact issue exists. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court is correct in denying the plea to the jurisdiction. *Id.* If the relevant evidence fails to raise a fact question or is undisputed on the jurisdictional issues, the trial court rules on the plea as a matter of law. *Id.* at 228.

### Waiver of Immunity for Certain Contract Claims

Governmental immunity protects political subdivisions of the State, including housing authorities, from suit and liability. *See Harris Cnty. v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004); *see also* TEX. LOC. GOV'T CODE ANN. § 392.006 (West Supp. 2010) (housing authorities are units of government whose functions are essential governmental functions). The legislature created a waiver of immunity from suit for certain contract claims. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151–.160; *see also Tooke v. City of Mexia,* 197 S.W.3d 325, 332–33 (Tex.2006). Section 271.152 of the Texas Local Government Code provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. Only written contracts stating the essential terms of the agreement for providing goods or services that are "properly executed on behalf of the local governmental entity" are contracts subject to the waiver under section 271.152. *Id.* § 271.151(2) (defining a "contract subject to this subchapter").

### DISCUSSION

The central question in this appeal is whether the employment contract was "properly executed" on behalf of the DHA as required by section 271.152 for a waiver of the DHA's immunity. We therefore must determine the meaning of that requirement.

#### "Properly Executed"

Statutory construction is a legal question we review de novo. *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683 (Tex.2007). Our primary objective in construing a statute is to determine and give effect to the legislature's intent as

expressed by the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008). We use the legislature's definitions and consider any technical or particular meaning the words may have acquired. *Id.* (citing TEX. GOV'T CODE ANN. § 311.011(b) (West 2005)). Otherwise, we construe the words of the statute according to their plain and common meaning, unless such a construction leads to absurd results. *Id.* at 625–26; *see also* TEX. GOV'T CODE ANN. § 311.011(a).

 Neither section 271.151 nor the local government code defines the words or phrase "properly executed." Therefore, we look to the plain and common meaning of those words. *See City of Rockwall*, 246 S.W.3d at 625. "Properly" means "suitably, fitly, rightly, [or] correctly." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1818 (1981). "Executed" means "put into effect[, or] carr[ied] out fully and completely." *Id.* at 794; *see also Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex.2010) (per curiam) (noting "execute" means "[t]o perform or complete (a contract or duty) … [or] [t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form") (quoting BLACK'S LAW DICTIONARY 609 (8th ed. 2004)). As related to a contract, those terms together convey the meaning that a contract is "properly executed" when it is signed in accordance with the requirements for making it correct or valid. *Cf.* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED at 794 (defining "execution" as "the act of signing, sealing, and delivering a legal instrument or giving it the forms required to make it valid"). In addition, a "properly executed" contract under section 271.151(2) must be "on behalf of the local governmental entity." TEX. LOC. GOV'T

CODE ANN. § 271.151(2). The phrase "on behalf of" means "in the interest of, as the representative of, [or] for the benefit of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED at 198.

 The DHA is a local governmental entity as defined by section 271.151(3) of the local government code. *See Abilene Hous. Auth. v. Gene Duke Builders, Inc.*, 226 S.W.3d 415, 416–17 (Tex.2007) (per curiam) (citing *Gene Duke Builders, Inc. v. Abilene Hous. Auth.*, 168 S.W.3d 215, 218 (Tex.App.-Eastland 2005), *rev'd on other grounds*, 226 S.W.3d 415 (Tex.2007) (municipal housing authority is "political subdivision of this state" and not "unit of state government" as defined by section 2260.001 of government code)). Therefore, the DHA is subject to the waiver of immunity to suit under section 271.152 of the local government code if it "is authorized by statute or the constitution to enter into" and entered into the alleged contract with Killingsworth. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. The DHA's authority to contract may be granted by statute. *See, e.g., id.* § 392.038 (West 2005) (municipal housing authority has power to hire secretary and other officers or employees the authority considers necessary). The authority to enter into contracts also may be dictated by various documents adopted by a governmental entity for its own governance, such as city ordinances, charters, by-laws, or resolutions. *See, e.g., City of Houston v. Clear Channel Outdoor, Inc.*, 233 S.W.3d 441, 446 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (looking to city charter to determine whether contract "properly executed"). For a housing authority, such documents may include by-laws and rules necessary for the housing authority "to implement [its] powers and purposes." TEX. LOC. GOV'T CODE ANN. § 392.065.

Based on the language of the statute, we conclude the focus of the statute is whether the DHA had authority to enter into the contract, and we construe the phrase "properly executed" as referring to the discrete requirements or procedures outlined in the relevant statutes, ordinances, or other documents giving the DHA such authority. That construction does not require, as part of "proper execution," compliance with all laws and statutes governing a particular governmental entity. With this construction in mind, we turn to the DHA's issue.

### Killingsworth's Pleadings

■ The DHA first challenges Killingsworth's pleadings and argues Killingsworth pleaded himself out of section 271.152's waiver of immunity because "the alleged approval of the [contract] by [the] DHA's Board, if it occurred at all, was in violation of the Texas Open Meetings Act." Relying on TOMA's requirement that any vote or final action taken by a governmental body be in a duly noticed meeting open to the public,[4] the DHA maintains if the approval of the contract occurred as alleged—that is, in a closed, executive session of the Board—then such approval was a violation of TOMA and therefore, unlawful and voidable. The DHA asserts a

"voidable" or "unlawful" approval of a contract does not constitute "proper execution" for purposes of waiving its immunity under section 271.152.

■ Under our construction of the phrase "properly executed," the DHA's assertion that the manner in which the contract was approved violated TOMA does not equate to a failure to properly execute the contract.[5] TOMA is not directed to a governmental entity's authority to enter into contracts. Rather, TOMA's purpose is "to provide 'openness at every stage of [a governmental body's] deliberations' " and is intended to enable public access to and increase public knowledge of government decision making. *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 466 (Tex.App.-Dallas 2007, no pet.) (quoting *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex.1991) (orig. proceeding)).

Here, Killingsworth marshaled a written employment contract and alleged the contract was "properly executed" when it was approved by the Board in its executive session, signed by Chairman Brignon as the person with authority to sign it, and delivered by Brignon to Killingsworth, who accepted the offer of employment. Con-

---

4. *See* TEX. GOV'T CODE ANN. § 551.102.

5. Even assuming the manner in which the contract was approved violated TOMA, the approval of the contract in the executive session of the Board is not necessarily null or void. *See Spiller v. Tex. Dep't of Ins.*, 949 S.W.2d 548, 551 (Tex.App.-Austin 1997, pet. denied) (TOMA violation does not necessarily invalidate action by governmental body). Rather, the approval is merely voidable at the instance of someone with standing to complain. TEX. GOV'T CODE ANN. § 551.141 (actions taken by governmental body in violation of TOMA are voidable); *id.* § 551.142(a) (interested person "may bring an action by mandamus or injunction to stop, prevent, or reverse a [TOMA] violation"). The approval remains

valid "until adjudicated and declared void." *Love Terminal Partners, L.P. v. City of Dallas*, 256 S.W.3d 893, 897 (Tex.App.-Dallas 2008, no pet.); *see also Swain v. Wiley College*, 74 S.W.3d 143, 146 (Tex.App.-Texarkana 2002, no pet.) ("A 'voidable' act operates to accomplish the thing sought to be accomplished until the fatal vice in the transaction has been judicially ascertained and declared."). Thus, even a contract procured by a potentially voidable act is still a valid contract. *See, e.g., Cameron & Willacy Cntys. Cmyt. Projects, Inc. v. Gonzalez*, 614 S.W.2d 585, 589 (Tex.Civ. App.-Corpus Christi 1981, writ ref'd n.r.e.) (failure to act in accordance with by-laws and statute did not render act invalid).

struing Killingsworth's pleadings liberally in favor of jurisdiction, as we must, and considering the meaning of the phrase "properly executed," we conclude Killingsworth met his burden of pleading facts affirmatively demonstrating a waiver of the DHA's immunity. *See Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The DHA also has not shown an incurable jurisdictional defect on the face of that pleading depriving the trial court of subject matter jurisdiction. *Concerned Cmty. Involved Dev., Inc.*, 209 S.W.3d at 673.

### The Jurisdictional Evidence

■ The DHA also challenges the existence of Killingsworth's jurisdictional facts and argues the evidence controverts Killingsworth's factual allegations that the contract was "properly executed." Specifically, the DHA points to contract language that provides the terms are "nonbinding unless signed by the Chairman of the Board of Commissioners of the Dallas Housing Authority and approved by the Board of Commissioners." The DHA argues the evidence establishes "no contract with Killingsworth could have been made other than by vote of DHA's Board" and "no such vote ever took place." The DHA also asserts its by-laws "make clear" that no employee, agent, or representative of DHA "may, without prior authorization of the Board," contractually obligate the DHA. Killingsworth responds that the DHA's by-laws "give the Chairman actual or apparent authority to sign contracts on behalf of the DHA," and Chairman Brignon's signature and delivery of the contract to him creates at least a fact issue as to proper execution and the existence of a binding contract.

The jurisdictional evidence before us consists of evidence submitted by both parties and includes (1) the written employment agreement; (2) board minutes from the November 20, December 5, and December 19, 2006 meetings; (3) the affidavit of the DHA's human resources director; (4) the DHA's by-laws, personnel policy, and hiring procedures; (5) the parties' discovery responses; and (6) the affidavit of Jerry Killingsworth. The written contract for employment is addressed to Killingsworth and sent in the name of the board. The contract has the required signature by the chairman, and Killingsworth claims he was told the board voted in a closed session to approve the contract. While the contract requires the board's approval, the contract does not require that approval to be in a public meeting.

In his affidavit, Killingsworth testified Brignon told him the board conducted a special meeting on November 20 to consider Brignon's authorization to effectuate a CEO employment contract. He also stated Brignon told him on November 20 and again on November 21 that "the Board had already voted to approve the Agreement 3–0 in executive session." Based on his previous discussions with the other commissioners, he "had no reason to doubt him." The contract itself was dated November 21, 2006, signed by Brignon, and offered him the job. The contract states "[t]he Board of Commissioners of the Dallas Housing Authority ("DHA") is pleased to extend you this contract of employment...."

The board's minutes from November 20 reflect the board went into a closed session and indicate the chairman requested that "after their closed session the Commissioner may hear discussion and consideration of a resolution for authorization as Chairman to effectuate a CEO employment contract." The DHA's by-laws state "[t]he Commissioners shall employ a Secretary, who shall also serve as the President, Chief Executive Officer and Executive Di-

rector of the [DHA]." The by-laws also permit the commissioners to "determine the qualifications, duties and compensation of the Secretary" and allow the commissioners to "authorize any officer or employee of the [DHA] to enter into a contract or to execute an instrument in the name of and on behalf of the [DHA]"; in the absence of any delegation, "the Chairman shall have the authority to sign all contracts, deeds and other instruments made by the [DHA]."

The November 20 minutes do not reflect what happened in the closed session.[6] The minutes from December 19 indicate a discussion in which the commissioners were asked whether there had been "negotiations with some one other than [the then-existing CEO]," and Commissioner Washington responded that "it was voted on." The December 19 minutes also confirm Chairman Brignon "was given permission from the Board to go out and seek [CEO] candidates," but Vice Chairman Velazquez stated "any contract ... is not finalized until it comes back to the Board for final approval and that has not happened yet." The minutes from the DHA's December 5 meeting, however, suggest the board voted on matters related to the CEO position. An attendee at the December 5 meeting addressed the board and stated "[t]here may have been [a] public meeting technically, but the fact that no one has known about this, that the Board voted to remove one of the most successful CEO's of public housing in the nation" and asked the board to "back up and start again." Another attendee, speaking on behalf of the then-current CEO, similarly commented that the board should "[s]top and rescind that decision."

The evidence before us—the by-laws granting the commissioners power to employ a CEO and the chairman the authority to sign contracts, the board minutes confirming Brignon had the board's permission to effectuate a CEO contract and the references to a decision related to the CEO position, as well as the chairman's signature and delivery of an employment contract to Killingsworth—is more than a scintilla of evidence to show the contract was "properly executed" on behalf of the DHA. Thus, indulging every reasonable inference and resolving any doubts in Killingsworth's favor, we conclude Killingsworth raised a jurisdictional fact question as to whether the contract was properly executed. *See Miranda*, 133 S.W.3d at 228.

## Waiver of Immunity by Filing a Counterclaim

■ The DHA also contends it did not waive its immunity by filing its counterclaim for declaratory relief and requesting recovery of attorney's fees. We agree. In *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 376–77 (Tex.2006), the Texas Supreme Court held when a governmental entity joins the litigation process by asserting its own affirmative claims for monetary relief, that entity's immunity may be partially waived. Here, the DHA's counterclaim is not an affirmative claim for monetary relief. Rather, the counterclaim was part of the DHA's defense and sought a declaration under TOMA that the contract is void. *See, e.g., City of Alton v. Sharyland Water Supply Corp.*, 277 S.W.3d 132, 143 (Tex.App.-Corpus Christi 2009, pet. granted) (concluding city's counterclaim asking court to declare agreement void not claim for monetary relief). Al-

---

**6.** The DHA filed a motion for protective order, seeking to preclude Killingsworth from pursuing discovery on and inquiring into matters that took place during the closed, executive session of the board. The trial court granted the motion.

though the DHA also requested recovery of its attorney's fees and costs associated with its counterclaim, a request for attorney's fees that is "purely defensive in nature" and "unconnected to any claim for monetary relief" does not waive immunity under *Reata.* *See Tex. Dep't of Criminal Justice v. McBride,* 317 S.W.3d 731, 732–33 (Tex.2010); *see also City of Dallas v. Jones,* 331 S.W.3d 781, 784–85 (Tex.App.-Dallas 2010, no pet. h.) (confirming request for declaratory judgment and attorney's fees did not implicate immunity). We therefore conclude the DHA's counterclaim does not waive its immunity from suit.

## CONCLUSION

Because Killingsworth met his burden of pleading facts demonstrating a waiver of the DHA's immunity and created a jurisdictional fact question as to whether the contract was properly executed, we conclude the trial court correctly denied the DHA's plea to the jurisdiction. *See Miranda,* 133 S.W.3d at 227–28. Accordingly, we overrule the DHA's sole issue and affirm the trial court's order.