**CITY OF OAK RIDGE NORTH,**
**Appellant,**

v.

**Paul MENDES, Appellee.**

No. 09–10–00378–CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 13, 2011.

Decided March 24, 2011.

Ramon G. Viada III, Viada & Strayer, The Woodlands, for Appellant.

Michael A. Starzyk, April L. Walter, Raven Applebaum, Starzyk & Associates, P.C., The Woodlands, for Appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

The issue in this interlocutory appeal is whether the City of Oak Ridge North ("City") is immune from the claims advanced in a lawsuit filed by Paul Mendes ("Mendes"), the City's former city manager. Mendes's suit involves three claims that are the subject of this appeal. Specifically, Mendes sought to recover severance pay pursuant to the provisions of his written employment agreement, incentive payments for securing grant funds while employed as the City's manager, and damages for alleged violations of chapter 123 of the Texas Civil Practice and Remedies Code, referred to as the "Texas Wiretap Statute." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 123.001–.004 (West 2011).

We conclude the trial court should have dismissed Mendes's incentive pay and wiretap claims with prejudice. We further conclude the trial court should have conditionally dismissed Mendes's severance pay claim and granted him the right to replead his claim for severance pay. Additionally, we render judgment dismissing Mendes's claim for injunctive relief under section 22.077 of the Texas Local Government Code and his claim alleging the City violated the Texas Open Meetings Act, as Mendes agreed to dismiss those claims while this appeal was pending. See Tex. Loc. Gov't Code Ann. § 22.077 (West 2008).

### Background

Mendes served as Oak Ridge North's city administrator from 1994 through May 2005, and he then became the City's manager after the voters elected to adopt a city manager form of government. See Tex. Loc. Gov't Code Ann. §§ 25.001–.029 (West 2008). On July 1, 2005, Mendes signed an employment contract with the City; five paragraphs of Mendes's contract pertain to termination. One of these paragraphs provides that the City will pay severance for the remainder of the contract's current term if Mendes is terminated without cause.

Mendes's 2005 contract was for a two-year term, and was subject to renewal absent notice of termination. According to the contract's terms, the contract renewed on July 1, 2009. On December 14, 2009, the City Council voted to terminate Mendes following a councilman's motion stating that Mendes had engaged in conduct that allowed the Council to terminate him.

Subsequently, Mendes filed a lawsuit alleging the City terminated him without cause. Mendes's Third Amended Original Petition, his live pleading, advances five claims against the City. Mendes's live pleading asserts a claim for (1) breach of contract arising from the City's failure to pay severance benefits, (2) breach of contract arising from the City's failure to pay incentive payments based on Mendes's success in obtaining grants on the City's behalf, (3) statutory damages arising from the City's alleged violations of the Texas Wiretap Statute, (4) injunctive relief based on the City's alleged violation of section 22.077 of the Texas Local Government Code, and (5) attorney's fees and costs for violating the Texas Open Meetings Act (Texas Government Code section 551.141) based on the City's alleged failure to give Mendes an opportunity to be heard before being terminated. See Tex. Gov't Code Ann. § 551.141 (West 2004).

The City, in response to Mendes's lawsuit, filed a plea to the jurisdiction[1] asserting that it had not waived its right to its governmental immunity and concluding that governmental immunity protected it from the claims advanced by Mendes. After both parties filed briefs addressing the trial court's exercise of subject matter jurisdiction over Mendes's claims, the trial court ruled, denying the City's plea to the jurisdiction on all claims. After the parties filed their appellate briefs, Mendes withdrew his claim under section 22.077 of the Texas Local Government Code and his claim alleging a violation of the Texas

---

1. The purpose of a plea to the jurisdiction "is to defeat a cause of action without regard to whether the claims asserted have merit." Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000). The Legislature expressly gave a governmental unit the right to pursue an interlocutory appeal of a denial by a trial court of a plea to the jurisdiction. See Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West 2008). A city, by definition, is a "[g]overnmental unit." See id. § 101.001(3)(B) (West 2011).

Open Meetings Act. In this interlocutory appeal, we address the trial court's order as it relates to Mendes's three remaining claims: his severance pay claim, his incentive payments claim, and his claim the City violated the Texas Wiretap Statute.

### Standard of Review

■ "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). Additionally, whether a petition alleges facts affirmatively demonstrating that a trial court possesses subject matter jurisdiction over the controversy is a question of law that is reviewed *de novo*. *Id.* In conducting a *de novo* review, courts "may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). When the governmental entity's plea to the jurisdiction challenges the sufficiency of the plaintiff's pleadings, the appeals court determines whether the plaintiff's pleadings allege "facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226.

■ In determining the sufficiency of the plaintiff's pleadings, courts construe the pleadings in the plaintiff's favor and look to the plaintiff's intent. *Id.* If the pleadings do not allege facts sufficient to allow the court to determine whether it has jurisdiction, "the issue is one of pleading sufficiency and the plaintiff[s] should be afforded the opportunity to amend."

*Id.* at 226–227. Additionally, "[i]n a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003).

■ Where the plaintiff's pleadings affirmatively negate the existence of jurisdiction, "then a plea to the jurisdiction may be granted without allowing the plaintiff[ ] an opportunity to amend." *Miranda*, 133 S.W.3d at 227. Stated another way, when a court determines that the plaintiff's pleadings are deficient and that the deficiency can be cured, the plaintiff "deserves 'a reasonable opportunity to amend' unless the pleadings affirmatively negate the existence of jurisdiction." *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex.2007) (quoting *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004)); *Miranda*, 133 S.W.3d at 226–27; *Brown*, 80 S.W.3d at 555.

### Analysis

■ The basis of the trial court's decision to deny the City's plea to the jurisdiction is unstated because the trial court, in denying the City's plea, did so without entering findings of fact or conclusions of law. Generally, the doctrine of governmental immunity protects political subdivisions, such as cities, from suit and liability. *See Sykes*, 136 S.W.3d at 638; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003). Immunity from suit, as distinguished from immunity from liability,[2] deprives a trial court of

2. As the Texas Supreme Court has explained:

Immunity from liability and immunity from suit are two distinct principles. Immunity from liability protects the state from judgment even if the Legislature has expressly consented to the suit. Like other affirmative defenses to liability, it must be pleaded or else it is waived. Immunity

from liability does not affect a court's jurisdiction to hear a case.

In contrast, immunity from suit bars an action against the state unless the state expressly consents to the suit. The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express

subject matter jurisdiction unless the government has consented to being sued. *Miranda,* 133 S.W.3d at 224; *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999). A governmental entity's consent to suit allows the trial court to exercise jurisdiction over lawsuits where consent exists. *Jones,* 8 S.W.3d at 638. In a suit against a governmental entity, the plaintiff bears the burden of establishing that the government consented to suit, "which may be alleged either by reference to a statute or to express legislative permission." *Id.*

We limit our discussion to the claims that Mendes did not voluntarily dismiss. Of these, we first address Mendes's contractually based claim for severance pay.

### Severance Pay Claim

 Mendes's petition alleges the City breached his employment contract by failing to honor the contract's severance pay provisions. The City's plea argues that it was not authorized to enter into a contract obligating it to pay severance for the remainder of Mendes's employment term after his termination because such an obligation interfered with the status of a city manager as an "at will" employee. By statute, "[t]he city manager is appointed by and serves at the will of the governing body of the municipality." Tex. Loc. Gov't Code Ann. § 25.028. Although the trial court denied the City's plea and refused to dismiss any of Mendes's claims, and even though it is Mendes's burden to establish that the City consented to suit for a breach of contract claim, none of Mendes's pleadings cite to a statute establishing that the City waived its right to governmental immunity from being sued for breach of contract. *See Jones,* 8 S.W.3d at 638.

 Generally, "[i]f a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Sykes,* 136 S.W.3d at 639. However, in this case, the trial court never identified any deficiency in Mendes's pleadings, as it denied the City's plea challenging the trial court's jurisdiction. Additionally, all of Mendes's amended petitions were filed voluntarily. If Mendes has not had a reasonable opportunity to cure his pleading deficiency, "he deserves the opportunity if his pleadings can be cured." *Koseoglu,* 233 S.W.3d at 839.

On appeal, the City advances the same argument it made to the trial court—that Mendes's severance pay provision is void because it unduly interferes with the city manager's statutorily directed "at will" status. *See* Tex. Loc. Gov't Code Ann. § 25.028 ("The city manager is appointed by and serves at the will of the governing body of the municipality."). To determine whether the Legislature waived the City's immunity from suit with respect to Mendes's severance pay claim, we focus on the language employed by the Legislature in section 271.152 of the Local Government Code, a provision that Mendes could have pled to cure his deficient pleadings. Section 271.152 provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for

legislative permission. Since as early as 1847, the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction.

*Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999) (citations omitted).

the purpose of adjudicating a claim for the breach of the contract, subject to the terms and conditions of this subchapter. Tex. Loc. Gov't Code Ann. § 271.152 (West 2005). Section 271.151 defines "[c]ontract subject to this subchapter" as meaning "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (West 2005).

The City argues that Mendes's contract was not "properly executed" by the City because the City was not authorized to enter into a contract that altered the city manager's status as an "at will" employee. According to the City, the severance pay provision in Mendes's contract, if enforced, would allow Mendes to collect his salary for the remainder of his contract term, approximately eighteen months. Given the length of Mendes's remaining term under the contract, the City contends that Mendes's contract "operates as a deterrent on a newly elected council's right and prerogative to remove the existing city manager at will and hire a new city manager whose strengths and philosophies better correspond with the policy preferences of the new council." The City points out that by statute, "[t]he city manager is appointed by and serves **at the will of the governing body** of the municipality." *See id.* § 25.028 (emphasis added by the City). Based on the City's claim that the severance pay provision interferes with the City's right to terminate the city's manager, the City concludes that the provision is "not properly authorized by law."

We observe that Mendes might have cited section 271.152 of the Texas Local Government Code as the basis for his claim asserting a waiver of governmental immunity, as that provision waives governmental immunity for contracts that have

been "properly executed." *See id.* §§ 271.151(2), 271.152. We must construe section 271.151 to determine whether the phrase "properly executed" as used in the statute requires that each provision in a given contract must also be enforceable to vest courts with jurisdiction over claims for breach of contract. *See id.* § 271.151(2). In construing statutes, our primary objective is to ascertain and give effect to the intent of the Legislature. *See Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004). "In discerning that intent, we begin with the plain and common meaning of the statute's words[,]" and we read the statute as a whole. *Id.* (internal quotations and citations omitted). "If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute." *Id.*

Section 271.151 does not define the phrase "properly executed." *See* Tex. Loc. Gov't Code Ann. § 271.151 (West 2005). Texas Local Government Code, section 1.002, states that "[t]he Code Construction Act (Chapter 311 of the Government Code) applies to the construction of each provision in this code except as otherwise expressly provided by this code[;]" nonetheless, the Texas Government Code, like section 271.151 of the Texas Local Government Code, does not contain a definition for the phrase "properly executed." *See id.* § 1.002 (West 2008) (footnote omitted); *cf.* Tex. Gov't Code Ann. §§ 311.001–.034 (West 2005 & West Supp.2010). In the absence of statutory definitions of these terms, and in accord with the requirements of the Code Construction Act, we look to the common meaning of the phrase "properly executed" to determine its meaning. *See* Tex. Gov't Code Ann. § 311.011 (West 2005).

The common meaning of the term "properly" is "suitably, fitly, rightly, [or] correctly[.]" *Webster's Third New International Dictionary* 1818 (2002). The common meaning of the term "execute," when used in the context of a legal instrument, is "complete[, or] perform what is required to give validity to (as by signing and perhaps sealing and delivering)[.]" *Id.* at 794; *see also Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex.2010) (per curiam) (noting " 'execute' " means " '[t]o perform or complete (a contract or duty) ... [or][t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form' ") (quoting *Black's Law Dictionary* 609 (8th ed.2004)). While the common definitions of these terms require the person executing the document to have the authority to do so, the terms do not focus on whether each contract's term is ultimately capable of being enforced.

The Legislature's decision to waive immunity to suit for "properly executed" contracts must also be understood in the context of the statute as a whole, which only waives immunity with respect to written contracts. *See* Tex. Loc. Gov't Code Ann. § 271.151(2) (defining "[c]ontract subject to this subchapter" as including only "written contract[s]"). Mutual agreement to the terms of a written contract is generally signified by the parties' respective signatures. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex.2007) ("Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind."). In the case of entities, the persons who are responsible for signing contracts generally consist of the individuals authorized by the entity to bind it to perform the terms of agreements.

Given the plain meaning of the phrase "properly executed," in the context of Type A municipalities, we conclude that the phrase refers to the ordinances, acts, laws, or regulations enacted to authorize the person who signed the contract, in this case the City's mayor, to sign the contract on the entity's behalf. *See Hous. Auth. of the City of Dallas v. Killingsworth*, 331 S.W.3d 806, 812 (Tex.App.-Dallas 2011, no pet. h.) (concluding that the phrase " 'properly executed' " with respect to a housing authority referred "to the discrete requirements or procedures outlined in the relevant statutes, ordinances, or other documents giving the [authority to enter into the contract]").

■ With respect to the jurisdictional evidence relevant to the mayor's authority to sign Mendes's contract, the record before the trial court included a copy of the contract, which bears the mayor's signature. We note that the City did not file a verified plea denying the mayor's authority to sign the contract on the City's behalf. Under Rule 93(7) of the Texas Rules of Civil Procedure, a party is required to file a verified denial of any instrument in writing upon which a claim is based to contest whether the instrument bears the signer's signature or to deny the instrument was executed by the signer's authority, and "[i]n the absence of such a sworn plea, the instrument shall be received in evidence as fully proved." Tex.R. Civ. P. 93(7); *see also City of S. Houston v. Sears*, 488 S.W.2d 169, 173 (Tex.Civ.App.-Houston [14th Dist.] 1972, no writ) (holding that failure to file verified denial of authority resulted in waiver); *City of Groves v. Ponder*, 303 S.W.2d 485, 489 (Tex.Civ.App.-Beaumont 1957, writ ref'd n.r.e.) (holding that the city was required to file verified denial of employment contract to challenge whether the contract, executed by the president and secretary of the directors of

the water control district, had been authorized). Where the jurisdictional evidence before the trial court creates a fact question, "the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28. Although the City may file amended pleadings to contest the mayor's authority to sign Mendes's contract, its failure to file a verified plea challenging the mayor's authority to execute the employment contract allowed the trial court to conclude that it could properly deny the City's plea to the jurisdiction with respect to Mendes's severance pay claim. We further conclude that the pleadings and jurisdictional evidence fail to affirmatively negate that governmental immunity bars Mendes's claim for severance pay. *See id.* at 227.

In summary, Mendes's petition fails to allege that section 271.152 of the Texas Local Government Code waived the City's immunity from suit, but that defect can be corrected. Because Mendes's pleading defect was identified for the first time on appeal, Mendes should have an opportunity to amend his pleadings to properly plead his severance pay claim. Nevertheless, because Mendes's pleadings did not allege a statutory basis to support a finding that the City waived its right to governmental immunity, the trial court should have conditionally granted the City's plea and then given Mendes the opportunity to amend his pleadings for the reasons we have explained.

*Incentive Pay Claim*

■■■ Mendes bases his claim for incentive pay on a 2002 meeting of the City Council. During that meeting, Mendes asserts that the City Council unanimously approved "additional compensation to be paid to [Mendes] based upon grant monies he secured for the City, and such bonus payments were to be a permanent feature of his employment compensation package." Based on the City Council's action, Mendes alleges that he was entitled to receive five percent of any grants in the range of $50,000 to $150,000, and ten percent of any grants exceeding $150,000. The City contends that the City Council's action did not create a written contract obligating the City to pay Mendes incentive payments.

■■■ Mendes's incentive payments claim is not based on his written agreement governing his relationship with the City between 2005 and 2009. Mendes's contract, dated July 1, 2005, contains no provision for incentive payments, and the contract's integration clause provides:

> This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the employment of Mendes as City Manager by City and contains all of the covenants and agreements between the parties with respect to such employment in and of any manner whatsoever.

"If a contract is unambiguous, the parol evidence rule precludes consideration of evidence of prior or contemporaneous agreements unless an exception to the parol evidence rule applies." *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 451 (Tex. 2008). We note that the Legislature has not waived governmental immunity to subject governmental entities to suits for claims arising out of oral statements made during open session which are not then reduced to writing and properly executed. *See* Tex. Loc. Gov't Code Ann. §§ 271.151–.152 (waiving governmental immunity for claims based on "properly executed" written contracts).

In support of his claim that the City altered the terms of his written contract, Mendes relies upon the affidavits of two city councilmen who voted to pay Mendes

incentive payments in 2002. Their affidavits indicate that they intended the City to make incentive payments until the Council decided to change the obligation it created during the meeting. Mendes also relies upon deposition testimony of the City's current mayor, who testified he understood that the City was obligated to make incentive payments after September 2002, and that the City's obligation to make incentive payments would need to be budgeted each year. The minutes of the September 2002 City Council meeting were also in evidence, as well as an October 2002 memorandum regarding the incentive payments that were to be paid to Mendes, which the City's secretary prepared and placed in Mendes's employment file. Mendes contends that all of this evidence supports his claim that the city councilmen, in 2002, agreed to pay incentives based on the City's receipt of grants.

▇▇▇ With respect to Mendes's claim for incentive payments, we conclude that his contract is fully integrated. It follows that any testimony about what prior city councils intended with respect to paying Mendes incentive payments, as well as the memorandum, which does not constitute a properly executed written contract, are incompetent parol evidence. Therefore, there is no competent jurisdictional evidence to show that Mendes's incentive pay claim was based upon a term contained in a properly executed written agreement. *See Haden*, 266 S.W.3d at 451. Moreover, Mendes's 2005 contract does not include an agreement by the City to pay incentive payments for grants received between July 1, 2005, and the date Mendes's employment ended in December 2009. Where a written agreement is fully integrated, the parol evidence rule precludes the enforcement of inconsistent prior or contemporaneous agreements. *See Hubacek v. Ennis State Bank*, 159 Tex.

166, 317 S.W.2d 30, 32 (1958). "Merger, with respect to the law of contracts, refers to the extinguishment of one contract by its absorption into another contract and is largely a matter of the intention of the parties." *Smith v. Smith*, 794 S.W.2d 823, 827–28 (Tex.App.-Dallas 1990, no writ). "An integration clause is in essence the merger doctrine memorialized." *Id.* at 828.

Because Mendes's incentive payments claim for the period 2005 through 2009 is not founded upon a properly executed written contract, the trial court erred in denying the City's plea to jurisdiction with respect to that claim. We further conclude the defect cannot be cured by amendment, since the parol evidence rule prohibits the consideration of evidence that relates to the parties' transactions prior to July 2005. *See Haden*, 266 S.W.3d at 451. Consequently, Mendes's incentive payments claim should have been dismissed with prejudice. *See Sykes*, 136 S.W.3d at 637 (holding that dismissal for lack of subject matter jurisdiction should be "with prejudice" when a court resolves that the claims pled and the claims that could have been asserted are outside the provisions of a statutory waiver).

*Wiretap Statute Claim*

▇▇▇ Mendes alleged the City improperly intercepted communications to which he was a party while employed by the City. In evaluating whether the Legislature waived governmental immunity with respect to wiretap claims, Mendes bore the burden of establishing a waiver. *See Jones*, 8 S.W.3d at 638. With respect to his wiretap claim, the only statute Mendes's petition references is chapter 123 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 123.001–.004. In asking the trial court to dismiss Mendes's wiretap

claim, the City's plea to the jurisdiction states: "The Texas Wiretap Statute does not purport to waive immunity. It merely provides that an aggrieved party [']may sue **a person** who ... intercepts, attempts to intercept, or employs or obtains another to intercept or attempt to intercept [certain private communications].['] *See* Tex. Civ. Prac. & Rem.Code Ann. § 123.002 [ (emphasis added) ]." The City's plea acknowledged that the term "person," as defined by the Code Construction Act, includes governmental entities. *See* Tex. Gov't Code Ann. § 311.005(2) (West 2005). However, the City also pointed out that the Code Construction Act specifically states: "In a statute, the use of 'person,' as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction." *Id.* § 311.034 (West Supp.2010).

On appeal, the City contends that the Legislature has not clearly and unambiguously waived the City's governmental immunity for claims alleging violations of the Texas Wiretap Statute. In his brief, Mendes relies solely on the language of the Texas Wiretap Statute in arguing that the Legislature waived the City's right to governmental immunity to claims alleging violations of the Texas Wiretap Statute. In order to resolve the question, we must construe the Texas Wiretap Statute.

When considering whether the Legislature has enacted a statute that waives a governmental entity's sovereign immunity, it is settled that the statute "must contain a clear and unambiguous expression of the Legislature's waiver of immunity." *Taylor,* 106 S.W.3d at 696; *see also* Tex. Gov't Code Ann. § 311.034 (requiring waivers of sovereign immunity to be "effected by clear and unambiguous language"). Here, the Texas Wiretap Statute does not contain the sort of language the Legislature generally uses when it waives immunity from suit.[3] *See Taylor,* 106 S.W.3d at 697. Where the language the Legislature employs is less than clear, to find a waiver we must still consider whether the Legislature intended the statute to waive governmental immunity "beyond doubt[.]" *Id.* Further, ambiguities are generally resolved "by retaining immunity." *Id.* Also, if the governmental entity is required to be joined as a party in a case

---

**3.** In a footnote in *Taylor,* the Texas Supreme Court cited the following statutes as examples of statutes that provide that a state entity may be sued:

> *See, e.g.,* Tex. Civ. Prac. & Rem.Code § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."); *Id.* § 63.007(b) ("The state's sovereign immunity to suit is waived only to the extent necessary to authorize a garnishment action in accordance with this section."); *Id.* § 81.010(d) ("Governmental immunity to suit is waived and abolished only to the extent of the liability created by Subsection (b)."); *Id.* § 101.025(b) ("A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter."); *Id.* § 103.002(a) ("A person may bring a suit against the state under this

chapter, and the state's immunity from suit is waived."); Tex. Gov't Code § 2007.004(a) ("Sovereign immunity to suit ... is waived and abolished to the extent of liability created by this chapter."); *Id.* § 554.0035 ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter."); Tex. Prop.Code § 74.506(c) ("The state's immunity from suit without consent is abolished with respect to suits brought under this section."); *see also* Tex. Gov't Code § 554.0035 ("A public employee whose employment is suspended or terminated or who is discriminated against in violation of Section 554.002 is entitled to sue ....") *amended by* Acts 1995, 74th Leg., ch. 721, § 3, eff. June 15, 1995.

*Taylor,* 106 S.W.3d at 696–97 & n. 6.

to which immunity would otherwise attach, "the Legislature has intentionally waived the State's sovereign immunity." *Id.* at 697–98. Finally, when the Legislature chooses to waive sovereign immunity, it "often enacts simultaneous measures to insulate public resources from the reach of judgment creditors." *Id.* at 698. Therefore, "one factor to consider is whether the statute also provides an objective limitation on the State's potential liability." *Id.*

The Texas Wiretap Statute does not contain language expressly waiving immunity from suit because it does not contain the type of language employed that is typical of statutes waiving governmental immunity. *See id.* at 696–97 & n. 5–6. Generally, the Texas Wiretap Statute subjects "a person" to suit for the "[i]nterception" of certain communications. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 123.001–002. However, the Government Code specifically provides that including governmental entities within the meaning of the term "person," does not indicate that the Legislature intended to waive sovereign immunity "unless the context of the statute indicates no other reasonable construction." Tex. Gov't Code Ann. § 311.034.

Additionally, the Texas Wiretap Statute can be given a reasonable interpretation without interpreting it in a way that results in the waiver of governmental immunity from suit. *See id.* The Texas Wiretap Statute applies to persons acting in their private capacities, so the statute is not without meaning if it does not apply to governmental entities. *See Taylor,* 106 S.W.3d at 700. We further observe that the Texas Wiretap Statute provides no damage caps, and it also provides the right to recover exemplary damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 123.004(2)-(5). As a result, there are no objective statutory limits placed on the aggrieved party's potential recovery under the stat-

ute. The Texas Supreme Court has observed that a construction of a statute which would subject the State to an exemplary damage award "reinforces our skepticism that the Legislature intended to waive sovereign immunity by mere implication." *Taylor,* 106 S.W.3d at 701–702 (construing section 321.003 of the Texas Health and Safety Code so that it did not constitute a waiver of governmental immunity). We are unable to conclude that the Legislature intended to waive governmental immunity for Texas Wiretap Statute claims based on the language contained in the statute.

We rejected an argument similar to the argument Mendes presents here in deciding that the Legislature did not waive a county's immunity for a claim alleging real estate fraud despite the Legislature's decision to broadly define the term "person" in section 27.01 of the Texas Business and Commerce Code. *See Jefferson County v. Bernard,* 148 S.W.3d 698, 702 (Tex.App.-Beaumont 2004, no pet.) (holding that Legislature had not waived county's immunity to suit based on broad definition of the term "person" to include counties); *see also* Tex. Bus. & Com.Code Ann. § 27.01 (West 2009) (utilizing definition of "person" found in section 311.005 of the Texas Government Code). Resolving all ambiguities in favor of retaining immunity, we conclude governmental immunity bars Mendes's claim alleging violations of the Texas Wiretap Statute.

### Conclusion

We reverse the trial court's order of August 9, 2010, denying the City's plea to the jurisdiction. We remand Mendes's claim for severance pay for further proceedings and instruct the trial court to conditionally dismiss the severance pay claim. We render judgment dismissing all

of Mendes's other claims with prejudice. *See Sykes,* 136 S.W.3d at 637.

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.