**Affirmed and Opinion Filed August 29, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00502-CV

**JOHN STANCU, Appellant**
**V.**
**GOVERNOR GREG ABBOTT AND THE STATE OF TEXAS, Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-11577**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Pedersen, III

Appellant John Stancu challenges the trial court's May 4, 2022 order granting appellees' Plea to the Jurisdiction and dismissing his claim for lack of jurisdiction. In three issues, Stancu contends the trial court erred by: (1) arbitrarily and wrongfully dismissing his case "by completely ignoring the facts"; (2) wrongfully denying his right to amend his lawsuit; and (3) violating his constitutional right to trial by jury. We affirm the trial court's order.

## Background

On March 13, 2020, due to the imminent threat posed by spread of the Covid-19 virus, appellee Governor Greg Abbott (Abbott) declared a state of disaster pursuant to the Texas Disaster Act. TEX. GOV'T CODE ANN. § 418.001, *et seq.* The federal government's response to the Covid-19 pandemic included a number of programs designed to assist unemployed persons, including the Federal Pandemic Unemployment Compensation Program (FPUC). Texas agreed to participate in the FPUC, and a number of other relief programs, in the Agreement Implementing the Relief for Workers Affected by Coronavirus Act (the Relief Agreement). On May 17, 2021, Abbott notified the Secretary of Labor that Texas was opting out of the relief programs, including the FPUC, as of June 26, 2021.

Stancu was enrolled in the FPUC. On June 27, 2021, the Texas Workforce Commission (TWC) informed him that Abbott and the State of Texas had ended the State's participation in the federal programs. Stancu's petition attaches documents indicating that on the termination date, he had $8,850.00 of unemployment benefits remaining. Stancu alleges that after termination of his benefits, he attended a state-sponsored job fair, where he contracted Covid-19.

Stancu sued Abbott and the State of Texas, pleading that they inflicted severe harm upon him through their arbitrary abuse of power in terminating the Relief Agreement for his unemployment benefits. He pleaded further that he suffered adverse, irreparable injury because of appellees' actions, including contracting the Covid-19 virus and resulting disability. He sought "monetary relief over $1,000,000."

Appellees answered and filed their Plea to the Jurisdiction, arguing that Stancu's claim was barred by sovereign immunity and that he lacked standing to sue appellees. Stancu responded to the Plea, and the trial court heard the parties' arguments on written submission. The court ultimately granted the Plea and dismissed Stancu's claim.

This appeal followed.

## Discussion

Appellees alleged in their answer and their Plea that the trial court lacked subject matter jurisdiction over Stancu's suit.[1]

---

[1] Stancu appeared pro se in the trial court, as he does in this Court. Appellees contend that Stancu's brief fails to analyze his issues and that his arguments should be waived. Stancu's brief is not a model of clarity, but we have been directed to reach the merits of an appeal when we can. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("appellate courts should reach the merits of an appeal whenever reasonably possible"). Accordingly, we address the trial court's jurisdiction and decide Stancu's issues as we understand them.

*Sovereign Immunity*

Our starting point is the settled premise that sovereign immunity deprives a trial court of jurisdiction over a lawsuit in which a party has sued the State unless the Legislature has consented to suit. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex. 2004). Likewise, a public official sued in his official capacity —as Abbott is sued here—is protected by the same sovereign immunity as the governmental unit he represents. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843–44 (Tex. 2007). Accordingly, we treat these appellees identically for purposes of our legal discussion of immunity. *See Paxton v. Simmons*, 640 S.W.3d 588, 601–02 (Tex. App.—Dallas 2022, no pet.) ("A case brought against a state officer in his official capacity is essentially a suit against the state.").[2]

A plaintiff has the burden to demonstrate the trial court's jurisdiction over his claim. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). That burden includes establishing a waiver of sovereign immunity in a suit against the government. *Id.* When, as here, a plea to the jurisdiction challenges the pleadings, we determine whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. We construe the plaintiff's pleadings in favor of jurisdiction, we look to the plaintiff's

---

[2] Stancu complains that sovereign immunity is a "bogus defense used by kings and dictators" and a "usurpation of our Constitutional rights." But the United States Supreme Court has stated, "Although the sovereign immunity of the States derives at least in part from the common-law tradition, the structure and history of the Constitution make clear that the immunity exists today by constitutional design." *Alden v. Maine*, 527 U.S. 706, 733 (1999). We are not free to disregard this settled doctrine.

–4–

intent, and we accept the facts alleged as true. *Id.* at 226, 228. "To prevail, the party asserting the plea must show that, even if the allegations in plaintiff's pleadings are taken as true, there remains an incurable jurisdictional defect on the face of the pleadings depriving the trial court of subject matter jurisdiction." *Hous. Auth. of City of Dallas v. Killingsworth*, 331 S.W.3d 806, 810 (Tex. App.—Dallas 2011, pet. denied).

Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226.

*Pleading an Exception to Sovereign Immunity*

At the most fundamental level, sovereign immunity protects the State from lawsuits for money damages. *See Tex. Nat. Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex. 2002). Stancu's pleading seeks only monetary relief. To make such a recovery, he must plead a basis for legislative consent or for waiver of immunity for his claim.

Stancu argues that appellees were performing a proprietary function when they terminated the Relief Agreement. This argument is inapposite, because a state cannot perform proprietary acts. "A proprietary function is one intended primarily for the advantage and benefit of persons within the corporate limits of the municipality rather than for use by the general public." *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex. 1987). Thus, the exception to governmental immunity

for proprietary conduct applies only to cities and cannot provide a basis for Stancu's claim.

As we construe Stancu's pleadings in favor of jurisdiction, we look to his intent. *See Miranda*, 133 S.W.3d at 226, 228. We understand Stancu to allege that Abbott's termination of the Relief Agreement was an unauthorized act, i.e., that it was *ultra vires*. A suit against a state official for acting outside his authority is not barred by sovereign immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 393 (Tex. 2011) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370–74 (Tex. 2010)). But a claim will fall within the *ultra vires* exception only if it alleges that the officer acted without legal authority or failed to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372. The suit may not complain of the officer's exercise of discretion. *Id.*

Stancu alleges that Abbott lacked authority to opt out of the Relief Agreement.[3] He contends that only the TWC had that authority. Stancu relies on TWC's historic role in administering unemployment benefits under Texas law as well as its role in administering the federal benefits he received under the Relief Agreement. But the Texas Disaster Act gives the governor broad powers during the term of the emergency. He is responsible for meeting "the dangers to the state and

---

[3] A suit complaining of *ultra vires* actions cannot be brought against the governmental entity; it must be brought against the allegedly responsible government actor in his official capacity. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. 2015). Accordingly, our discussion under this point is limited to Abbott's conduct.

people" presented by the disaster. GOV'T § 418.011. Indeed, the Act declares that "[d]uring a state of disaster and the following recovery period, the governor is the commander in chief of state agencies, boards, and commissions having emergency responsibilities." *Id.* § 418.015(c). As "commander in chief" of the TWC, Abbott was empowered to make decisions concerning administration of unemployment benefits.

The only remaining question, then, is whether withdrawing from the Relief Agreement was within Abbott's discretion. By its own terms, participation in the Relief Agreement was voluntary. 15 U.S.C.A. § 9023(a) ("Any State which desires to do so may enter into and participate in an agreement under this section with the Secretary of Labor."). Likewise, termination of the Relief Agreement was voluntary. *Id.* ("Any State which is a party to an agreement under this section may, upon providing 30 days' written notice to the Secretary, terminate such agreement."). Abbott had discretion to terminate Texas's participation in these programs. Accordingly, his doing so could not be an *ultra vires* act. *See Heinrich*, 284 S.W.3d at 372.

Stancu argues that when Abbott terminated the Relief Agreement he was not properly exercising his emergency powers. According to Stancu, "No emergency situation exists created by the unemployment benefits. The only real emergency is that thousands of people like Stancu are losing benefits they need and will suffer." Abbott explained his reason for termination in his May 17, 2021 letter:

The Texas economy is thriving and employers are hiring in communities throughout the state. In fact, the amount of job openings in Texas is far greater than the number of Texans looking for employment, making these unemployment benefits no longer necessary. For this reason, the State of Texas will continue to focus its efforts on connecting Texans with these job opportunities so they can find meaningful employment to provide for their families.

Stancu disagrees with Abbott's decision. But Abbott had the authority to make it for the reason he gave. *See Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 918 (Tex. 2020) (Governor's emergency actions can "consider valid policy goals, such as encouraging economic recovery").

We conclude that Stancu failed to plead a waiver of immunity for his claim that would allow him to recover monetary damages. His claim was barred by appellees' sovereign immunity.

*Stancu's Appellate Issues*

In his first issue, Stancu contends that the trial court dismissal of his claim was wrongful and arbitrary and completely ignored the facts he pleaded. We have credited Stancu's pleaded facts in our analysis of appellees' sovereign immunity, but we have concluded that his claim was barred by sovereign immunity. Therefore, the trial court's dismissal of his claim was not wrongful or arbitrary. We overrule his first issue.

In his second issue, Stancu argues that the trial court incorrectly dismissed his claim without giving him the opportunity to amend his pleadings. He cites cases applying the law of special exceptions and asserts that in an amended pleading, "the

plaintiff may include new allegations." Our review of the record has not identified a request by Stancu to amend his pleadings. However, even if he made such a request, the trial court would not have erred by denying it. "When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend." *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). "On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend." *Id.* In this case, Stancu's pleading failure could not be cured by pleading "more allegations" against these defendants as he suggests. In the absence of an exception to the application of sovereign immunity, Stancu's claim for monetary damages affirmatively negated jurisdiction, so there was no basis for an opportunity to amend his pleadings.

In his third issue, Stancu contends that the trial court "arbitrarily denied [his] Constitutional Right to a trial by a jury of his peers." In the absence of subject matter jurisdiction, a court has no authority to hear a case and decide issues raised by the parties. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000) (subject-matter jurisdiction is essential to court's power to decide case). "The requirement that a court have subject matter jurisdiction is in effect a limitation on a litigant's right to trial by jury." *Black v. Jackson*, 82 S.W.3d 44, 55 (Tex. App.—Tyler 2002, no pet.). Stated differently, if a court lacks subject matter jurisdiction,

as the trial court did here, it cannot proceed with trial at all. The case must be dismissed. *See id.* We overrule Stancu's third issue.

## Conclusion

We affirm the trial court's order granting appellees' Plea to the Jurisdiction and dismissing Stancu's claim for lack of jurisdiction.

/Bill Pedersen, III//

220502f.p05

BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN STANCU, Appellant

No. 05-22-00502-CV          V.

GOVERNOR GREG ABBOTT
AND THE STATE OF TEXAS,
Appellees

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-11577.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Miskel participating.

In accordance with this Court's opinion of this date, the trial court's May 4, 2022 order is **AFFIRMED**.

It is **ORDERED** that appellees Governor Greg Abbott and the State of Texas recover their costs of this appeal from appellant John Stancu.

Judgment entered this 29th day of August, 2023.