

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00021-CV

_____

SIDNEY B. HALE, JR., Appellant

V.

CITY OF BONHAM, Appellee

_____

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CV-14-41722

_____

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

The City of Bonham owned an airport hangar at its Jones Field Municipal Airport which it leased to Sidney B. Hale, Jr.[1] After an ice storm caused the hangar's roof to collapse, Hale sent a demand letter to the City seeking to recover some $400,000.00 in damages to property stored in the hangar and damaged by the collapse. After having received the letter, the City filed a suit for declaratory judgment wherein it requested the entry of a finding that Hale's supposed claims against the City were barred by governmental (sovereign) immunity. In response, Hale filed counterclaims against the City wherein he alleged that (1) the City was negligent in failing to maintain the premises, (2) there was a premises defect in the hangar, (3) the City had breached its lease agreement, (4) the City was estopped from denying its liability under the doctrine of promissory estoppel, (5) the City had been unjustly enriched, (6) the City was guilty of violations of the Deceptive Trade Practices Act (DTPA), (7) the City was grossly negligent, and (8) the City was liable under a theory of bailment. The City countered by filing a motion for partial summary judgment as to Hale's claims of negligence and his premises liability claims by alleging that the City was protected by governmental immunity. The trial court granted the City's motion for summary judgment.

The City then filed another motion for summary judgment, this one pertaining to Hale's claims for recovery pursuant to his breach of contract and promissory estoppel claims, along with

---

[1]It appears that the City of Bonham entered into a five-year lease agreement with Hale and Charles Mattingly in 1989. The copy of the lease attached to Bonham's motion for summary judgment reflects Mattingly's name stricken with the notation "Deceased July 12, 2002" written beside that interlineation. Despite the apparent demise of Mattingly, neither party to this lawsuit indicates that there was any agreement between the parties to this lawsuit other than the one memorialized by this lease, and it appears from their conduct that the contractual terms in the 1989 agreement remained in force and effect on a month-to-month basis until the day the hangar collapsed.

the allegations of breach of the DTPA, unjust enrichment, and bailment. Based on these motions for summary judgment, the trial court entered an order of dismissal of the suit with prejudice to refiling the same.[2]

## I. The Law of Governmental Immunity

In essence, the trial court ruled that Hale was barred from recovering from the City for the damages incurred by him because the City possessed governmental immunity against those claims. We review this finding de novo. *Cumbie v. City of Grand Saline*, No. 06-10-00076-CV, 2011 WL 61730, at *1 (Tex. App.—Texarkana Jan. 6, 2011, no pet.) (mem. op.) (citing *Tex. Natural Res. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)).

"'Sovereign immunity protects the State from lawsuits for money damages.'" *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (quoting *IT–Davy*, 74 S.W.3d at 853). "Political subdivisions of the state, including cities, are entitled to such immunity—referred to as governmental immunity—unless it has been waived." *Id.* Governmental immunity is a common-law doctrine. *City of Galveston v. State*, 217 S.W.3d 466, 471 (Tex. 2007).

Under the common law, governmental or sovereign immunity exists when a municipality performs a governmental function; this occurs when a municipality "acts 'as the agent of the State in furtherance of general law for the interest of the public at large.'" *City of Georgetown v. Lower Colorado River Auth.*, 413 S.W.3d 803, 807 (Tex. App.—Austin 2013, pet. dism'd) (quoting *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex. 1986) (internal quotations marks omitted),

---

[2]Since the suit itself was first instituted by the City as a declaratory judgment action, it may have been more proper for the judgment to have dismissed Hale's counterclaim or to have granted the City's declaratory judgment finding that sovereign immunity barred the claim rather than dismissing the suit itself. Both parties, however, take the position that the trial court's actions disposed of Hale's claims against the City.

*superseded by statute on other grounds,* Act of May 18, 1987, 70th Leg., R.S., ch. 342, 1987 Tex. Gen. Laws 1761, 1761, *repealed by* Act of Feb. 21, 1989, 71st Leg., R.S., ch. 1, § 2, 1989 Tex. Gen. Law 1, 1, *as recognized in City of Terrell v. McFarland*, 766 S.W.2d 809, 813 (Tex. App.— Dallas 1988, writ denied) (applying proprietary-governmental dichotomy to contract claims)). "Given that the municipality is effectively acting on behalf of the state when it performs a governmental function, it is imbued with the state's sovereign immunity, and therefore is entitled to governmental immunity." *Id*. "By contrast, '[p]roprietary functions are those functions performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality.'" *Id* (quoting *Gates*, 704 S.W.2d at 738–39). "Because the municipality is not acting on behalf of the state when it performs proprietary functions, the municipality traditionally is not entitled to governmental immunity for those functions, and thus has 'the same duties and liabilities as those incurred by private persons or corporations.'" *Id.* (quoting *Gates*, 704 S.W.2d at 738–39).

Accordingly, in determining whether a municipality is entitled to governmental immunity, we first decide whether it was performing a governmental function or a proprietary function when the incident giving rise to the alleged injuries occurred. If the municipality was performing a governmental function, it is entitled to immunity from suit, unless expressly waived by the Texas Legislature.[3] *Albert*, 354 S.W.3d at 373 (citing *Jones*, 8 S.W.3d at 638). As stated in *Albert*,

> "[I]mmunity from suit bars an action against the state unless the state expressly consents to the suit. The party suing the governmental entity must establish the

---

[3]"Governmental immunity is comprised of immunity from suit and immunity from liability." *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam)). In references to immunity, we will be referring to immunity from suit unless otherwise stated.

state's consent, which may be alleged either by reference to a statute or to express legislative permission. Since as early as 1847, the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction."

*Id.* (quoting *Jones*, 8 S.W.3d at 638 (citations omitted)); *see Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); *Taylor v. Grounds*, No. 06-13-00061-CV, 2013 WL 6198831, at \*2 (Tex. App.—Texarkana Nov. 27, 2013, pet. denied) (mem. op.) (citing *Reata Constr. Corp.*, 197 S.W.3d at 374). "Legislative consent to sue the governmental entity must be expressed in 'clear and unambiguous language.'" *City of Paris v. Abbott*, 360 S.W.3d 567, 574 (Tex. App.—Texarkana 2011, pet. denied) (quoting *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001)).

## II.     The City Was Performing a Governmental Function

Hale acknowledges that the operation and maintenance of an airport is included among the list of governmental functions contained in Section 101.0215 of the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215 (West Supp. 2014). Despite this inclusion, Hale argues that the City was performing a proprietary function because it voluntarily agreed to enter into the lease and because the "'real estate' aspect of the City is not a necessary component to the operation of the Airport and is not a function mandated by the State."

"A city functions in its governmental capacity when it performs functions mandated by the State." *City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 379 (Tex. App.—Dallas 2004, no pet.) (citing *Truong v. City of Houston*, 99 S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). "Cities are authorized to construct, operate and maintain airports and have been delegated power to be exercised by them in the execution of such endeavors." *Irving Indep. Sch.*

5

*Dist. v. Delta Airlines, Inc.*, 534 S.W.2d 365, 368 (Tex. Civ. App.—Texarkana 1976, writ ref'd n.r.e.) (citing Municipal Airports Act, 50th Leg., R.S., ch. 114, 1947 Tex. Gen. Laws 183, *repealed by* Act of May 1, 1995, 74th Leg. R.S., ch. 165, § 24, 1995 Tex. Gen. Laws 1025, 1870 (Chapter 165 repealed TEX. REV. CIV. STAT. ANN. art. 46d–1 et seq. and adopted TEX. TRANSP. CODE ANN. § 22.001–.901).

Although neither party raised the Municipal Airports Act, the Texas Legislature has stated, with respect to county and municipal airports,

> (a)     Subject to Chapter 101, Civil Practice and Remedies Code, the following functions are public and governmental functions, exercised for a public purpose, and matters of public necessity:  . . .
>
> . . . .
>
> (2)     the . . . improvement, . . . maintenance, [and] operation . . . of an airport or air navigation facility . . . ; and
>
> . . . .
>
> (4)     the acquisition and use of property and privileges by or on behalf of a local government or other public agency in the manner and for the purposes described by this chapter.

TEX. TRANSP. CODE ANN. § 22.002 (West 2011).  It has further specified:

> (a)     In operating an airport or air navigation facility that it owns, leases, or controls, a local government may enter into a contract, lease, or other arrangement for a term not exceeding 40 years with a person:
>
> (1)     granting the privilege of using or improving the airport or air navigation facility, a portion or facility of the airport or air navigation facility, or space in the airport or air navigation facility for commercial purposes;

. . . .

      (b)    In entering into the contract, lease, or other arrangement, the local government may establish the terms . . . .

TEX. TRANSP. CODE ANN. § 22.021 (West 2011).

Accordingly, the Texas Legislature has specifically indicated that a municipality's operation of an airport, including its entry into a lease agreement of that airport, is a governmental function. *See* TEX. TRANSP. CODE ANN. §§ 22.002, 22.021; *Redbird Dev. Corp.*, 143 S.W.3d at 379; *City of Corsicana v. Wren*, 317 S.W.2d 516, 517 (Tex. 1958) (holding that ownership and operation of an airport is governmental function that renders a city immune from liability for negligence).

## III.    The Texas Tort Claims Act Does Not Waive the City's Immunity from Suit

Because the City was performing a governmental function, it was immune from suit unless such immunity was clearly waived by the Texas Legislature. *See Tooke*, 197 S.W.3d at 332 (quoting *IT-Davy*, 74 S.W.3d at 854) (The Texas Supreme Court has "'consistently deferred to the Legislature to waive . . . immunity from suit, because this allows the Legislature to protect its policymaking function.'"); *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). We examine the TTCA, which allows suits against governmental units only in certain narrow circumstances, to determine whether there was "a clear waiver of governmental immunity." *City of Dallas v. Jennings*, 142 S.W.3d 310, 315 (Tex. 2004).

7

The TTCA states,

> A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:
>
> . . . .
>
>     (10)   airports . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215. This Section brings certain municipal functions within the purview of the TTCA, but does not automatically "itself operate as an independent waiver of sovereign immunity." *City of Mission v. Cantu*, 89 S.W.3d 795, 802 (Tex. App.—Corpus Christi 2002, no pet.). Instead, the plaintiff must demonstrate that none of the exceptions to the waiver of immunity apply and that the claims "fall within the areas of liability provided by section 101.021 of the Act." *Id.* (citing *Bellnoa v. City of Austin*, 894 S.W.2d 821, 826 (Tex. App.—Austin 1995, no writ) (per curiam) (stating "we must first determine whether the alleged harm meets the conditions of section 101.021"); *see San Antonio Water Sys. v. Overby*, 429 S.W.3d 716, 722 (Tex. App.—San Antonio 2014, no pet.).

Under Section 101.021,

> A governmental unit[4] in the state is liable for:
>
>     (1)   property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

---

[4]A city is a "governmental unit" under the TTCA. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (West Supp. 2014).

8

(A)     the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B)     the employee would be personally liable to the claimant according to Texas law; and

(2)     personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.[5]

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011).  Accordingly, the TTCA waives immunity from suit for municipalities performing the governmental functions listed in Section 101.0215, provided that the plaintiff's lawsuit fits within the specifications of Section 101.021.

Here, Hale's lawsuit for property damages arising from the collapse of the hangar's roof alleged neither (1) that his damage resulted from the negligent operation or use of a motor-driven vehicle or piece of equipment nor (2) that it was a suit to recover damages for personal injury or death.  Accordingly, the TTCA does not waive governmental immunity for Hale's claims.

## IV.     Immunity Is Not Waived for Hale's Contractual/Quasi-Contractual Claims

Despite the fact that Hale's lawsuit does not fit within the purview of Section 101.021, Hale argues that Section 271.152 of the Texas Local Government Code applies.  That Section reads:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

---

[5]Citing to *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004), Hale argues that Subsection 2 waives governmental immunity for premises defects.  Although *Miranda* involved a suit for personal injury, Hale's lawsuit does not allege any personal injury.  Thus, *Miranda*'s proper application of Subsection 2 does not protect Hale's lawsuit from dismissal.

TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005). The statute defines a "[c]ontract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2) (West Supp. 2014). The statute is specific. The contract must be one for goods or services provided to the local governmental entity. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010) ("The relevant inquiry is whether the Agreements entail the provision of 'goods or services' to the" local governmental entity.); *Water Exploration Co., Ltd. v. Bexar Metro. Water Dist.*, No. 04-10-00386-CV, 2011 WL 313856, at *8 (Tex. App.—San Antonio Feb. 2, 2011, no pet.) ("Had the Legislature intended to waive immunity for all contracts entered into by the State, it would have so stated.").

Hale has not shown that, by virtue of the lease agreement, he was obligated to perform any service for the City or that he was to provide any goods. Thus, Section 271.152 does not apply. "[T]he State does not waive immunity from suit simply by contracting with a private person. Legislative consent to sue is still necessary." *Gen. Servs. Comm'n*, 39 S.W.3d at 594 (citations omitted); *see Tooke*, 197 S.W.3d at 332. Simply put, "[t]here is nothing in the [TTCA] which implies that the City loses its sovereign immunity by leasing the airport to another." *Flippin v. City of Beaumont*, 525 S.W.2d 285, 288 (Tex. Civ. App.—Beaumont 1975, no writ).[6]

---

[6]Hale argues that the trial court should have allowed him additional time to conduct jurisdictional discovery. Given our disposition, we conclude that further discovery was unnecessary and would not have altered the outcome.

10

**V.     Conclusion**

We find that the City was immune from this suit.  Therefore, we affirm the trial court's dismissal of the case.

Bailey C. Moseley
Justice

Date Submitted:      September 1, 2015
Date Decided:        September 23, 2015