

**NUMBER 13-17-00013-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**KENNETH E. CASTLE,**                                                 **Appellant,**

**v.**

**CITY OF VICTORIA, TEXAS,**                                        **Appellee.**

---

**On appeal from the 267th District Court
of Victoria County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Contreras, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

By one issue, appellant Kenneth Castle asserts the trial court erred by granting appellee, the City of Victoria's (the City) plea to the jurisdiction. We affirm.

## I.   BACKGROUND

Castle is the owner of real property along the Guadalupe River as well as the water rights associated with that tract of land. Castle possessed a certificate of adjudication from

the State that entitled him to ownership of 608 acre-feet of water[1] from the Guadalupe River.

In February 2008, Castle and the City entered into a real estate contract for the transfer of Castle's water rights. The City agreed to purchase Castle's water rights in order to provide water for municipal purposes. Castle transferred the entirety of his water rights in the Guadalupe River to the City. In return, the City executed a "leaseback" provision in the contract, as well as a separate lease agreement, which allowed Castle to divert 108 acre-feet of the original 608 acre-feet of water for irrigation use for a term of fifteen years in exchange for annual payments by Castle.

Castle alleges that in October 2008, the City did not notify the Texas Commission for Environment Quality (TCEQ) of Castle's status as a diverter or of the leaseback provisions that the City and Castle had executed.[2] Castle did not pump water but continued to make the required payments to the City and the TCEQ.

In 2015, Castle learned from a TCEQ water master that he never had the right to legally pump water under the lease provisions due to his status with the TCEQ and that the City had amended the certificate of adjudication from the State and used all the water allotment given under the certificate. Castle made a demand for compensation and in November 2015, sued the City for breach of contract and fraud. The City claimed governmental immunity under a plea to the jurisdiction. Castle amended his pleadings and added causes of action for trespass to try title, inverse condemnation, and *ultra vires*

---

[1] An acre-foot of water is approximately 325,280 gallons of water.

[2] There was no written requirement contained within the contract between the City and Castle that the City was required to notify the TCEQ of the transfer.

acts.  The trial court granted the City's plea to the jurisdiction in relation to the breach of contract and fraud claims.[3]  This appeal followed.

## II. PLEA TO THE JURISDICTION

By his sole issue, Castle argues the trial court committed error by granting the City's plea to the jurisdiction.

### A. Standard of Review

A plea to the jurisdiction based on governmental immunity questions a trial court's subject-matter jurisdiction.  *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).  We review de novo the trial court's ruling on a plea to the jurisdiction.  *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam).  The plaintiff must allege facts that affirmatively establish the trial court's subject matter jurisdiction.  *Holland*, 221 S.W.3d at 642.  In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea if facts affirmatively demonstrating jurisdiction have been alleged.  *Miranda*, 133 S.W.3d at 227; *Smith v. Galveston Cty.*, 326 S.W.3d 695, 697–98 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

A plea to the jurisdiction may challenge the existence of jurisdictional facts.  *Miranda*, 133 S.W.3d at 227.  In some cases, the challenged jurisdictional facts are distinct from the merits of the case, but in other cases the challenged jurisdictional facts are inextricably linked to the merits of the case.  *Id.*  "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if

---

[3]  The additional causes of action were severed out of this action and are not part of this appeal.

a fact issue exists." *Id.* The standard of review on appeal "generally mirrors that of a summary judgment," and the court of appeals will take as true all evidence favorable to the nonmovant and indulge reasonable inferences and resolve doubts in the nonmovant's favor. *Id.* at 228.

If "the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226–27. A court may grant a plea to the jurisdiction without affording the plaintiff an opportunity to amend only if "the pleadings affirmatively negate the existence of jurisdiction." *Id.* at 227. "A trial court is not required to deny an otherwise meritorious plea to the jurisdiction or a motion for summary judgment based on a jurisdictional challenge concerning some claims because the trial court has jurisdiction over other claims." *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006).

## B.    Applicable Law

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Under the common-law doctrine of sovereign immunity, the state cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006)). Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the state, including counties, cities, and school districts. *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 208 (Tex. App.—Dallas 2012, no pet.).

4

Like sovereign immunity, governmental immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity, and (2) immunity from suit, which bars suit against the entity altogether. *Id.* Immunity from suit deprives a court of subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction, while immunity from liability is asserted as an affirmative defense. *See Miranda*, 133 S.W.3d at 224; *Palasota*, 362 S.W.3d at 208. "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002). "If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its liability is not disputed." *Id.* "Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue." *Id.*

Section 271.152 of the local government code waives immunity to suit for qualifying local governmental entities for purposes of adjudicating a claim for breach of contract entered into by the local governmental entity. TEX. LOC. GOV'T CODE ANN. § 271.152 (West, Westlaw through 2017 1st C.S.); s*ee City of Houston*, 353 S.W.3d at 134. For the waiver of immunity under section 271.152 to apply, three elements must be established: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by the local government code, (2) the entity must be authorized by statute or the Constitution to enter into contracts, and (3) the entity must in fact have entered into a contract that is defined by local government code section 271.151(2). TEX. LOC. GOV'T CODE ANN. § 271.152 ; s*ee City of Houston*, 353 S.W.3d at 134–35. Relevant to the issue of waiver of immunity, a contract is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity

5

that is properly executed on behalf of the local governmental entity." *See id.* at 135 (citing TEX. LOC. GOV'T CODE ANN. § 271.151(2)(B) (defining a "contract" for purposes of waiving immunity under this subchapter)).

**C.     Discussion**

**1.     Governmental vs. Proprietary Function**

Castle alleges that because the City was acting in a proprietary fashion, immunity does not apply. Because sovereignty is vested in "the people" of the state, immunity does not equally attach to every act by every governmental entity or political subdivision. *Id.* at 434. As a starting point, the state generally enjoys immunity for its lawful functions, which are on behalf of "the people." *Id.* Likewise, in the context of governmental immunity, there is a distinction between a municipality's governmental and proprietary function. *Id.* Acts done as a branch of the state—such as when a city "exercise[s] powers conferred on [it] for purposes essentially public . . . pertaining to the administration of general laws made to enforce the general policy of the state"—are protected by immunity. *Id.* But a city is not a freestanding sovereign with its own inherent immunity. *Id.* A city's "proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government.'" *Id.* at 436 (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)). A "city's proprietary functions are not performed under the authority or for the benefit of the state, and thus such functions do not share a common root with the state's sovereign immunity." *Id.* 436–37.

The Texas Supreme Court has held that the common law distinction between governmental and proprietary acts—known as the proprietary-governmental dichotomy—applies in the contract-claims context just as it does in the tort-claims context. *Id.* at 439.

6

The Texas Tort Claims Act (TTCA) provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages; s*ee* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023 (West, Westlaw through 2017 1st C.S.); and includes a non-exhaustive list, enumerating thirty-six legislatively-defined governmental functions that are protected by governmental immunity. S*ee id.* §101.0215(a) (West, Westlaw through 2017 1st C.S.). We use the common-law dichotomy to determine if the City was acting in a government or proprietary function and if there was immunity in the first instance, or use Section 271 acts to determine if the City waived already existing immunity. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 437 (Tex. 2016).

We must determine whether the City's real estate agreement and leaseback with Castle constitute a governmental or proprietary function under the TTCA. If the City's actions are listed as a governmental function under the TTCA, we have no discretion, regardless of the City's motives, to declare the actions as proprietary. *City of Plano v. Homoky*, 294 S.W.3d 809, 814 (Tex. App.—Dallas 2009, no pet.). Under section 101.0215(a)(11) of the TTCA, "waterworks", which the transfer of Castle's water rights would seemingly fall under, is listed as a governmental function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(11).

Despite this inclusion in the TTCA, Castle argues that the City was performing a proprietary function because it voluntarily entered into the lease and once it purchased the water rights, they became a good or service. *See Hale v. City of Bonham*, 477 S.W.3d 452, 457 (Tex. App.—Texarkana 2015, pet. ref'd) (stating that even though City leased land for an airport, it was still performing a governmental function on behalf of its citizens). In order to show waiver of immunity, Castle must demonstrate that none of the exceptions

to the waiver of immunity apply. *Id.* But in this situation, the contract was for water rights to benefit the citizens of the City, not for a good or service. Therefore, the provisions of the contract between Castle and the City would fall under waterworks within the TTCA, and the City would generally be entitled to governmental immunity.

Castle also wants us to consider that the real estate contract and leaseback contract were separate pieces of the agreement. However, Castle refers to the leaseback in his pleadings as consideration under the contract. In considering whether the City was engaged in a governmental or proprietary function, a plaintiff may not "split various aspects of [the City's] operation into discrete functions and recharacterize certain of those functions as proprietary." *Homoky*, 294 S.W.3d at 815 (quoting *City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied)). The contract and leaseback were part of the same document that involved the sale and transfer of Castle's water rights. Water rights fall into the "waterworks" category of the TTCA, and because we cannot split functions, Castle's claims involve the City's governmental functions.

### 2. Section 271 of Texas Local Government Code

Castle argues that even if his claims involve governmental functions, the water being leased back to him by the City is a good, not a real estate right, and immunity is therefore waived under Section 271 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.

The City is a local governmental entity and therefore, a contract for goods or services is required under law to waive immunity. Section 271.152 reads:

> A local government entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

*Id.* § 271.152. The statute defines a "contract subject to this subchapter" as a "written contract stating the essential terms of the agreement for providing goods and services to the local government entity that is properly executed on behalf of the local government entity." *Id.* § 271.151(2).

Even assuming that the water leased back to Castle is a good or service, Castle has not requested relief recoverable under Section 271. Section 271.153 states that:

(a) Except as provided in Subsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of contract subject to this subchapter is limited to the following:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

(b) Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

(1) consequential damages, except as expressly allowed under Subsection (a)(1);

(2) exemplary damages; or

(3) damages for unabsorbed home office overhead.

9

(c)    Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B).

*Id.* § 271.153 (West, Westlaw through 2017 1st C.S.).  Castle requested damages for "loss of use, lost profits, lost earnings, lost earning capacity, injury to real or personal property, and damages to crops and livestock."  The damages alleged were not of a recoverable nature under section 271 for a balance due and owing, for additional work, or for any other amount that would fall within the other provisions of Section 271.153.  *See id.*

We conclude that the City did not waive its governmental immunity for the claims raised by Castle because the contract between Castle and the City does not fall under the provisions of Chapter 271 of the local government code.  We overrule Castle's sole issue.

### III.    CONCLUSION

We affirm the trial court's ruling on the plea to the jurisdiction.


GINA M. BENAVIDES,
Justice


Delivered and filed the
12th day of April, 2018.