

# NUMBER 13-20-00561-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF WESLACO, TEXAS,                                    Appellant,

v.

CHRISTOPHER DE LEON, D/B/A
DE LEON AIRCRAFT
MAINTENANCE PROFESSIONAL,                                  Appellee.

On appeal from the 93rd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellant City of Weslaco appeals the trial court's denial of its plea to the

jurisdiction. By six issues, the City asserts that the trial court should have granted the plea

because: (1) the claims made by appellee Christopher De Leon d/b/a De Leon Aircraft

Maintenance Professional do not trigger a waiver of sovereign immunity under

§§ 271.152 and 271.153 of the local government code, *see* TEX. LOC. GOV'T CODE ANN. §§ 271.152, 271.153; (2) De Leon did not meet the elements to assert a takings claim; (3) there was no consent to suit by statute; (4) the City was not acting ultra vires; (5) immunity is not waived by a defensive declaratory judgment claim or a claim for attorney's fees; and (6) no other bases for waiver of immunity apply. We reverse and render.

## I.    BACKGROUND

The City of Weslaco owns the Mid Valley Airport (MVA). De Leon is in the business of providing mechanical aviation work. On June 5, 2018, De Leon leased an area of MVA known as W6 from the City, and he utilized a hanger (hangar W6) to perform repairs, maintenance, and other restorative services. The lease also provided that if De Leon violated any terms or conditions of the lease, the City had the right to terminate it and retake possession of any airport property leased to or under De Leon's control. De Leon agreed to comply with all laws, statutes, ordinances, regulations, rules, orders, standards, codes, airport policies, zoning codes, etc.

In December 2019, the City terminated the lease with De Leon. De Leon continued to access W6 because he subleased another hangar (hangar W32) from a third party. In April 2020, De Leon reported a theft of property valued over $32,000, but the City's investigation revealed that De Leon was the sole suspect of the theft. Thereafter, the City asserts that its airport director Andrew Munoz prohibited De Leon from entering MVA, including W6. De Leon subsequently entered MVA. On May 5, 2020, the City filed criminal trespass charges against De Leon, and he was arrested.

2

On June 24, 2020, De Leon filed his original petition and application for restraining order, temporary injunction, and permanent injunction against the City, asserting the City breached the lease by refusing him access to hangars W6 and W32. Following a hearing, on July 14, 2020, the trial court granted De Leon's application for temporary injunction and enjoined the City from preventing him access to the hangars. De Leon amended his petition asserting causes of action for breach of contract, tortious interference with an existing contract, conversion, unlawful lockout, unlawful taking, defamation, and ultra vires conduct. He sought a declaratory judgment, actual damages, court costs, attorney's fees, damages for loss of benefits of a contract, economic injury, loss of use of property, pre-and-post-judgment interests, and exemplary damages.

The City then filed an amended plea to the jurisdiction asserting that immunity was not waived for the breach of contract claim because the lease at issue was not a contract for goods or services. The City further asserted that governmental immunity was not waived for intentional torts such as tortious interference with contract, claims for conversion, and unlawful lockout claims. For the remaining takings claim, the City stated that De Leon did not plead sufficient facts.

De Leon responded asserting immunity was waived under § 271.152 of the local government code because services were rendered to the City via keeping the premises surrounding hangar W6 "clean and free of trash, litter, tall grass, weeds, junked automobiles, and scrap aircraft parts." *See id.* § 271.152. Alternatively, De Leon asserted that the City consented to suit because the lease stated that the parties consented to venue in Hidalgo County. De Leon further alleged that his taking claim was viable because

3

he had a vested property interest in hangar W6. According to De Leon, the City waived immunity by seeking declaratory relief and attorney's fees. Lastly, De Leon asserted that Munoz acted ultra vires when he made defamatory statements about De Leon.

On December 1, 2020, the trial court denied the City's plea. This appeal followed.

## II.    JURISDICTION

De Leon first contends that we lack jurisdiction over this appeal "because the City did not file a notice of interlocutory appeal within twenty days of the trial court's" July 14, 2020 order, which he claims denied the City's "original plea to the jurisdiction." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing that a person may appeal an interlocutory order that grants or denies a plea to the jurisdiction within twenty days of the order). Therefore, De Leon contends the City's plea to the jurisdiction was a motion to reconsider, which did not extend the time for the City to file this interlocutory appeal.

The trial court's July 14 order did not address the City's plea to the jurisdiction. Instead, on June 6, 2020, in its July 14 order, the trial court granted De Leon's requested injunctive relief. In its response to De Leon's motion for injunctive relief, the City did not raise any jurisdictional challenges or assert governmental immunity. Thus, the trial court's July 14, 2020 order granting a temporary injunction was not a ruling on any plea to the jurisdiction. S*ee id.* Therefore, the City's plea to the jurisdiction could not have been a "motion to reconsider" as De Leon suggests, and we address the merits of this appeal. *See id.*

## III.    STANDARD OF REVIEW

Governmental immunity from suit defeats a trial court's subject matter jurisdiction.

4

*See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Governmental immunity may be properly raised in a plea to the jurisdiction. *Id.* at 226. We review a trial court's ruling on a plea to the jurisdiction de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has met its burden to allege facts affirmatively demonstrating the court's jurisdiction. *Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of the plaintiffs and look to the pleader's intent. *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction," the plaintiff should be afforded the opportunity to amend. *Id.* at 226. If the pleadings affirmatively negate jurisdiction, then the plea may be granted without affording the plaintiff this opportunity. *Id.* at 227.

"When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). This is true even when the jurisdictional issue intertwines with the merits of the case. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, the standard of review mirrors that of a summary judgment, meaning that all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Id.* In the face of an evidentiary challenge, the plaintiff has the burden to present sufficient

evidence to create a genuine issue of material fact regarding the jurisdictional issue. *Id.* at 552. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Miranda*, 133 S.W.3d. at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228.

## IV.  CONTRACT FOR GOODS OR SERVICES

By its first issue, the City asserts the trial court erred by denying its plea to the jurisdiction because De Leon's suit does not trigger a waiver of the City's sovereign immunity under § 271.152 of the local government code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. Specifically, the City asserts the lease is not a contract for providing goods or services to the City.

### A.  Applicable Law

Section 271.152 of the Texas Local Government Code waives immunity to suit for governmental entities for the purpose of adjudicating a claim for breach of contract entered into by the local governmental entity. *See id.* It reads:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

*Id.* The statute defines a "[c]ontract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."

*Id.* § 271.151(2).

While chapter 271 of the local government code does not define "services," the Texas Supreme Court has held that, in the context of § 271.152, the term "is broad enough to encompass a wide variety of activities." *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin*, *L.L.C.*, 442 S.W.3d 297, 302 (Tex. 2014) (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010)). "The term 'includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed.'" *Lubbock Cnty.*, 442 S.W.3d at 303 (quoting *Kirby Lake*, 320 S.W.3d at 839). In other words, "there must be some obligation to perform." *Kirby Lake*, 320 S.W.3d at 839. For the contract to trigger § 271.152's waiver, the benefit received by the local governmental entity must be direct and unattenuated. *Id.* "[T]he absence of any agreement by the governmental entity to pay for goods or services may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity." *Lubbock Cnty.*, 442 S.W.3d at 305.

## B.     Discussion

De Leon contends that he performs "services" for the City because under the lease, he "agrees that he will at all times keep the premises of the [hangar], including the inside and the outside of the [hangar], clean and free of trash, litter, tall grass, weeds, junked automobiles, and scrap aircraft parts." However, the City does not pay for these "services," there is no direct and unattenuated benefit to the City, and the City did not seek anything in exchange for this conduct. Therefore, under the terms of the lease, De Leon does not provide a "service" as that term is used in the statute. *See Hale v. City of*

7

*Bonham*, 477 S.W.3d 452, 457 (Tex. App.—Texarkana 2015, pet. denied) (holding that a municipal airport hangar lease between a city and lessee did not obligate lessee to perform any service for city or provide any goods, and thus a statutory waiver of governmental immunity for contracts did not apply to waive the city's immunity from suit). The purpose of the lease was to allow De Leon to use hangar W6 for repairing airplanes. A lessee's mere agreement to maintain the hangar free of trash and weeds is not a contract for services, for it is not the purpose of the agreement, especially when the City did not agree to pay the lessee to do so. *See Lubbock Cnty.*, 442 S.W.3d at 305 (holding that the absence of any agreement by the governmental entity to pay for goods or services supports the conclusion that the lease is not one for goods or services). Rather, maintenance of the leased property is an obligation imposed on a lessee arising only by virtue of a lease. *See Wasson Ints., Ltd. v. City of Jacksonville,* 489 S.W.3d 427, 437 (Tex. 2016) ("Generally, contracts for land leases . . . are not covered by Chapter 271."); *see also Lubbock Cnty.*, 442 S.W.3d at 305 (concluding that the parties' contract was a lease of real property and not an agreement to provide goods or services). Because the lease was not a contract for goods or services, sovereign immunity was not waived under § 271.152, and trial court erred in denying the City's plea on this basis. We sustain the City's first issue.

## V. INVERSE CONDEMNATION

By its second issue, the City argues the trial court should have granted its plea to the jurisdiction because De Leon cannot meet the elements of a takings claim.

**A.      Applicable Law**

Government immunity is waived with respect to inverse-condemnation claims. *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011). Such a claim is predicated upon a viable allegation of a taking. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012) (citation omitted). A claimant seeking recovery for inverse condemnation must prove that the governmental entity intentionally took or damaged property for public use or that the governmental entity was substantially certain that would be the result. *See* TEX. CONST. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ."); *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618 (Tex. 2021). Whether a plaintiff has met this burden is a question of law. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998).

In *State v. Holland*, the Texas Supreme Court reiterated that a governmental entity's colorable contract rights may prevent a finding that it had the necessary intent to take property for public use. 221 S.W.3d 639, 643 (Tex. 2007). "When the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent-domain powers and thus retains its immunity from suit." *Id.* Wearing two hats, the State acts as a party to the contract and as sovereign. *Id.* "The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers." *Id.*

**B.      Discussion**

De Leon claims a vested interest in his personal property, including hangar W6,

9

airplanes, tools, and equipment contained inside the hangars on W6. The City claims that De Leon's pleadings do not meet the elements of a valid takings claim because there was no public benefit, and the property was not "taken or damaged for public use." *See Horne v. Dep't of Agric.*, 576 U.S. 350, 352 (2015) ("The Fifth Amendment requires that the Government pay just compensation when it takes personal property, just as when it takes real property."); *Hearts Bluff*, 381 S.W.3d at 477 (explaining that Texas takings jurisprudence is "consistent with federal jurisprudence").

To prevail on his takings claim, De Leon must have pleaded facts that the City intentionally took or damaged the equipment for public use or was substantially certain that would be the result. *See* TEX. CONST. art. I, § 17; *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). De Leon asserts he meets this jurisdictional requirement because the City "took away [his] access to his property which is a taking[]." However, there is no "requisite intent under constitutional-takings jurisprudence" when the City acquires equipment under color of contractual right and thus without any intent to exercise eminent domain power. *Tex. S. Univ. v. State Street Tr. & Bank Co.*, 212 S.W.3d 893, 911 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). De Leon's property was on MVA pursuant to a lease and not by virtue of the City's taking within the meaning of article I, § 17 of the Texas Constitution. *See id.* De Leon voluntarily used his property on MVA after entering a lease with the City; consequently, he cannot now say that the City took his property under the power of eminent domain. Instead, the City terminated a lease with De Leon—the City did not exercise eminent-domain powers. *See id.* (holding that the State does not have the requisite intent when it withheld property from an entity in a

10

contract dispute because it did not take the property under its power of eminent domain); *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 517 (Tex. App.—Austin 2014, no pet.) ("Plaintiff] had to allege or present evidence of facts that would distinguish the City's [act] as the exercise of sovereign powers, as opposed to the mere withholding of property or performance in a contract dispute in the manner that a private individual could."); *Green Int'l, Inc. v. State*, 877 S.W.2d 428, 434 (Tex. App.—Austin 1994, writ dism'd) ("Even if the government were to withhold property or payment it believed to be due the other party, the government would still be acting within the color of right to the extent it had a good faith belief that its actions were justified due to disagreements over payment due or performance under the contract."). Therefore, we hold "the City was merely asserting its colorable contract rights rather than its sovereign powers." *City of New Braunfels* 432 S.W.3d at 516–17 (internal citations omitted).

Additionally, regarding the public use allegation, De Leon makes the following statement in his pleading: "The City's acts were intentional and resulted in the taking of [De Leon's] property for public use, and [De Leon] was not adequately compensated." Other than this conclusory statement, De Leon failed to plead facts to support his claim. *See Miranda*, 133 S.W.3d at 226. De Leon did not plead any facts explaining what public use or benefit to the public was implicated by the City's alleged taking. *See id.* As a result, we view De Leon's claims as a recasting of his breach of contract claim to which immunity from suit applies. *See* TEX. CONST. art. I, § 17; *Tex. S. Univ,* 212 S.W.3d at 911. Accordingly, the trial court erred in denying the City's plea on this basis.

11

## VI.    CONSENT

By its third issue, the City argues there was no consent to suit by statute. De Leon responds that the City consented to suit by "resolution."[1] According to De Leon, the city council's approval of the lease was a consent to suit. We disagree with his contention that a city council's mere approval of a lease is equivalent to a waiver of immunity. *See Tex. Nat'l Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 856 (Tex. 2002) (recognizing that "by entering into a contract, the State does not waive its immunity from suit"). If we were to adopt De Leon's approach—that a city council's approval of a contract is a consent to suit—it would render most immunity statutes meaningless because cities may only act through a governing body. Accordingly, we sustain the City's third issue.

## VII.    ULTRA VIRES

By its fourth issue, the City asserts that Munoz was acting within his authority, not ultra vires.

## A.    Applicable Law

While a waiver of governmental immunity is usually required for suit against a governmental entity, "an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009). "Such claims must be brought against the state actor in her official capacity because the State and its subdivisions remain immune." *Sw. Bell Tel., L.P. v. Emmett*,

---

[1] Because we concluded that the lease was not a contract for goods or services, we do not address De Leon's waiver of immunity arguments regarding provisions within the lease. *See* TEX. R. APP. P. 47.1.

12

459 S.W.3d 578, 587 (Tex. 2015). "For the ultra vires exception to immunity to apply, it must be proved that the state actor either failed to perform a ministerial task or acted without legal authority." *Id.* Ministerial acts are acts "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment" while discretionary acts "require the exercise of judgment and personal deliberation." *Id.* (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)).

**B.     Discussion**

De Leon asserted that Munoz was acting outside of his authority as a state official when he pressed criminal trespass charges against De Leon and when he prevented De Leon from accessing the airport.[2] The extent of De Leon's response on appeal is as follows: "no evidentiary hearing was conducted[,] and De Leon's pleadings are taken as true for purposes of a plea to the jurisdiction. De Leon sufficiently alleged an ultra vires claim."

The relevant portions of the City's airport's rules and regulations provide:

1.7     Preservation of Airport Property

No person shall:

. . . .

        b.     Trespass on airport property without prior approval of the city.

. . . .

1.10    Right of Entry

---

[2] We note that De Leon abandoned his assertion that Munoz acted ultra vires by asserting defamatory statements about him.

13

The City of Weslaco shall have the right to limit access to airport property to tenants, guest(s) and those conducting legitimate business with business located on airport property.

. . . .

1.12    Restricted Access

No person shall enter any restricted area on the airport, posted as being closed to the public, except where entry is granted by written permission of the City.

. . . .

1.25 Penalties

Penalties for violations of the airport rules and regulations as contained herein, or as amended, will be determined as appropriate by the Airport Director, unless such violations also include City Ordinances or state or federal laws and in which case, appropriate legal penalties will be sought. Appropriate penalties for violation of the airport rules and regulations may include, but are not limited to denial of use of the airport and its facilities, and/or revocation of privileges, permits or authorization to conduct business and/or termination of lease agreement(s).

Under these rules and regulations, the City authorized Munoz to limit the right of entry to MVA, restrict access to MVA, seek "appropriate legal penalties," deny the use of MVA and its facilities, revoke any privileges or permits, and terminate any leases. Thus, Munoz's actions of restricting access to MVA and seeking legal penalties for violations of MVA's rules and regulations, as the airport's director, was conduct afforded to him pursuant to the City's rules and regulations.

Even if De Leon's allegations are true, his suit does not fall within the *ultra vires* exception to governmental immunity because "an *ultra vires* suit against [Munoz] can only seek to compel him to *follow* his governing authority, not to change that governing

14

authority." *Hall v. McRaven*, 508 S.W.3d 232, 240 (Tex. 2017); *see Houst. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016) ("[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself."). Munoz's authority to "determine" the "appropriate" penalties for violations of airport rules and regulations is plainly discretionary, and we find that Munoz did not otherwise exceed his authority. *See Heinrich*, 284 S.W.3d at 372 (explaining that *ultra vires* "suits do not seek to alter government policy but rather to enforce existing policy"). Accordingly, we conclude that Munoz's actions of pressing criminal trespass charges on De Leon and restricting his access to the airport were within the bounds of his authority. We sustain the City's fourth issue.

## VIII. DECLARATORY JUDGMENT

Lastly, the City asserts that the trial court improperly denied its plea to the jurisdiction because immunity is not waived by a defensive declaratory claim or a claim for attorney's fees. De Leon responds that the City waived immunity by "threatening suit and filing affirmative claims for relief." *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006) (holding that when a governmental entity joins the litigation process by asserting its own affirmative claims for monetary relief, that entity's immunity from suit may be partially waived).

In this case, De Leon, not the City, filed suit. In its answer, the City sought declaratory relief requesting that the trial court determine there is no lease, that De Leon was not entitled to possession of MVA, and that De Leon be required to vacate MVA. To

15

qualify as a claim for affirmative relief, a defensive pleading must allege "a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990). However, the City's request for declaratory relief is not an affirmative ground for monetary relief. Instead, the City seeks to establish its existing rights between the parties under a lease agreement. *See Heinrich*, 284 S.W.3d at 371 (providing that "a litigant's request for declaratory relief does not alter a suit's underlying nature" because the Uniform Declaratory Judgment Act was designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b)); *Reata*, 197 S.W.3d at 377; *Millard*, 800 S.W.2d at 842. Unlike *Reata* in which the City injected itself into the litigation process and sought damages, the City's declaratory request here was purely defensive in nature and unconnected to any claim for monetary relief. *See Reata*, 197 S.W.3d at 377; *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993) (holding that the UDJA "cannot be invoked as an affirmative ground for recovery to revise or alter such rights or legal relations").

Although the City sought attorney's fees under UDJA, "a request for attorney's fees that is purely defensive in nature and unconnected to any claim for monetary relief does not waive immunity under *Reata*." *Hous. Auth. of the City of Dall. v. Killingsworth*, 331 S.W.3d 806, 815 (Tex. App.—Dallas 2011, pet. denied) (internal citations omitted); *City of Dallas v. Jones*, 331 S.W.3d 781, 784–85 (Tex. App.—Dallas 2010, pet. dism'd) (confirming a request for declaratory judgment and attorney's fees did not implicate

16

immunity); *cf. My–Tech, Inc. v. Univ. of N. Tex. Health Sci. Ctr. at Fort Worth*, 166 S.W.3d 880, 884–85 (Tex. App.—Dallas 2005, pet. denied) (concluding that state entity's answer was merely defensive when it alleged the state entity was owed funds under the parties' contract but did not seek to recover the unpaid amount). Accordingly, the trial court improperly denied the City's plea to the jurisdiction on this basis, and we sustain the City's fifth issue.

## IX.    OTHER BASES

Lastly, the City asserts that "no other bases for waiver of immunity applies," so the trial court should have granted its plea. In the trial court and on appeal, De Leon broadly asserts that immunity is waived because of his UDJA claims and because the City was performing a propriety function when it entered the lease agreement. We address each assertion in turn.

## A.    UDJA

While the UDJA waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b). The UDJA does not alter a trial court's jurisdiction and is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Ass'n of Bus.,* 852 S.W.2d at 444; *see IT–Davy*, 74 S.W.3d at 855.

In his live petition, De Leon sought the following declarations: (1) the lease is valid; (2) the lease was illegally terminated; (3) De Leon did not breach the lease; (4) the City breached the lease; (5) the City terminated the lease without cause; (6) the City unconstitutionally denied him access to the hangars and MVA; (7) Munoz was without

legal authority to ban De Leon from MVA and in pressing criminal charges on him, and (8) Munoz has a right to access the hangars. De Leon sought actual damages, lost profits, loss of the benefit of the bargain, loss of use of property, compensatory damages, attorney's fees, and specific performance. However, De Leon's claims challenging the City's actions under the lease do not fall within any waiver of sovereign immunity. *See IT–Davy*, 74 S.W.3d at 855 ("[D]eclaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" and "cannot be maintained without legislative permission."). De Leon does not direct us to any provision of the UDJA that expressly waives immunity for his claims. *See Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) ("And a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit."); *IT–Davy*, 74 S.W.3d at 860 (stating that IT–Davy was "seeking declaratory judgment only in an attempt to have the trial court decide its breach-of-contract claim" and holding that immunity was not waived under UDJA). In this regard, "private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages," as De Leon as done here, "as a declaratory-judgment claim." *IT-Davy*, 74 S.W.3d at 856. Accordingly, we conclude that De Leon's declaratory judgment requests did not waive the City's immunity.

**B.     Proprietary Function**

By a single sentence, De Leon contends the City was engaged in a proprietary function rather than a governmental function when it entered the lease. The City exercises

18

their broad powers through two different roles: proprietary and governmental. *See Wasson Interests, Ltd.*, 559 S.W.3d at 142, 146 (Tex. 2018). Immunity protects municipalities from suit based on the performance of a governmental function. *See IT-Davy*, 74 S.W.3d at 853; *Hale*, 477 S.W.3d at 452 ("If the municipality was performing a governmental function, it is entitled to immunity from suit, unless expressly waived by the Texas Legislature."). "A city functions in its governmental capacity when it performs functions mandated by the State." *City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 379 (Tex. App.—Dallas 2004, no pet.) (citing *Truong v. City of Houston*, 99 S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

In *City of El Paso v. Viel* and in *Hale,* the courts of appeals decided this issue, and we find their reasoning persuasive. *See City of El Paso v. Viel*, 523 S.W.3d 876, 884–85 (Tex. App.—El Paso 2017, no pet.); *Hale*, 477 S.W.3d at 457. To aid its inquiry, the *Hale* court looked to the Texas Tort Claims Act and the Municipal Airports Act when it held that the City engaged in a governmental function when it leased an airport hangar. *See* 477 S.W.3d at 457; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215. The Municipal Airports Act provides that the "the . . . improvement, . . . maintenance, [and] operation . . . of an airport" is a governmental function. TEX. TRANSP. CODE. ANN. § 22.002. In "operating an airport," a municipality may enter into a "contract, lease, or other arrangement" with a third party for a term not exceeding forty years, granting the third party the "privilege of using or improving the airport . . . ." *Id.* § 22.021(a)(1). In entering the lease, the municipality "may establish the terms and fix the charges, rentals, or fees for the privileges . . . ." *Id.* § 22.021(b). Thus, the *Hale* court concluded that the

19

Legislature "specifically indicated that a municipality's operation of an airport, including its entry into a lease agreement of that airport, is a governmental function." 477 S.W.3d at 457.

In *City of El Paso*, the court similarly concluded that the City engaged in a governmental function when it leased a cargo warehouse at the City's airport to a tenant. *See* 523 S.W.3d at 885. According to the court, the lease narrowly restricted the tenant's use of the leased premises to aviation-related operations only. *Id.*

Here, De Leon agreed that the leased premises may be used for "aeronautical activity" and "for no other purposes." He further agreed that he would not "operate any non-aviation related business activity." Moreover, the recitals in the lease provide that the City deemed it "advantageous to itself and to the operation of the airport" to lease W6. *See Elizabeth Benavides Elite Aviation, Inc. v. City of Laredo*, No. 04-19-00717-CV, 2020 WL 2044678, at *3 (Tex. App.—San Antonio Apr. 29, 2020, no pet.) (mem. op.) (noting the City's recitals "that [it] is advantageous to itself, its citizenry, and the operation of its airport to lease" the premises located on the airport and concluding that the City engaged in a governmental function where it leased a tract of land at the airport). Like *Hale* and the *City of El Paso*, we conclude that the City was engaged in a governmental function in leasing W6 as statutorily permitted under § 22.021 of the Transportation Code thereby entitling it to immunity. *City of El Paso*, 523 S.W.3d at 885; *see also City of Cleburne v. RT Gen., LLC*, No. 10-20-00037-CV, 2020 WL 7394519, at *4 (Tex. App.—Waco Dec. 16, 2020, no pet.) (mem. op.) ("[B]ecause the lease here involved the operation, construction, and maintenance of a hangar at the City's municipal airport, we hold that

20

the City was performing a governmental function when it entered into the lease . . . .").

We sustain the City's last issue.

## X. CONCLUSION

We reverse the trial court's denial of the City's plea to the jurisdiction, and we render judgment dismissing De Leon's suit against the City.

JAIME TIJERINA
Justice

Delivered and filed on the
25th day of August, 2022.